■ WILLIAM MCKECHNIE, as President of the Patrolmen's Benevolent Association of the New York City Transit Police Department, et al., Appellants, v JUAN U. ORTIZ, as Personnel Director of the City of New York, et al., Respondents. JAMES J. BOYLE, as President of the Uniformed Firefighters Association, et al., Intervenors-Appellants, v JUAN U. ORTIZ, as Personnel Director of the City of New York, et al., Respondents.— Order and judgment (one paper) of the Supreme Court, New York County (William P. McCooe, J.), entered December 17, 1985, which granted defendants-respondents' motion to dismiss the complaint, is modified, on the law, to the extent of directing judgment in favor of respondents, declaring that Civil Service Law § 80 (8) is applicable only to retirement and pension benefits, and otherwise affirmed, without costs.

The question before us on this appeal is whether the New York State Legislature, in adopting Civil Service Law § 80 (7) in 1982, intended to give the members of New York City's uniformed services, who were laid off during the city's fiscal crisis, constructive seniority for all employment-related purposes, or solely for the purpose of retirement and pension benefits. Appellants contend that this section of the Civil Service Law, which was subsequently renumbered section 80 (8) in 1985, was intended to restore seniority benefits to rehired uniformed employees for all purposes, including determination of promotion eligibility, salary, assignments and leave. Although the complaint was dismissed below on the

ground that appellants failed to exhaust their administrative remedies, nevertheless, the court went on to find that the legislative history of this provision did not support appellants' claim that it was intended to confer seniority for all employment-related purposes.

While we agree with the dissent that appellants were not required to exhaust administrative remedies because the only question here is one of statutory construction *(Byer v City of New York,* 50 AD2d 771 [1st Dept 1975]), we cannot agree with the dissent's reading of the statute or interpretation of its legislative history. Section 80 (7) provided, in pertinent part, that any member of New York City's uniformed services, suspended on or about July 1, 1975 because of economy measures taken by the city, who returned to such service: "shall be deemed to have been in continuous service in determining seniority and length of service regardless of the duration of such suspension; provided, however, that for retirement purposes, a member receiving such service credit shall pay into the annuity savings fund of the retirement system the amount of the employee contributions required to have been paid into the retirement system for such service, within one year after this subdivision shall have taken effect."

A cursory examination of the statute appears to support appellants' position. However, this construction of the statute would conflict with other important constitutional and statutory requirements relating to the civil services. Under article V (§ 6) of the NY Constitution, promotions in the civil service must be based on merit and fitness. This requirement may not be varied by legislation *(Palmer v Board of Educ.,* 276 NY 222, 228 [1937]). The Civil Service Law itself provides that an employee, suspended through no fault of his own, shall be allowed to compete in promotional examinations "for which he would otherwise be eligible on the basis of his actual service before suspension" (§ 52 [3]) and that "previous training and experience * * * may be * * * given due weight as factors in determining the relative merit and fitness of candidates for promotion" (§ 52 [2]). Thus, a literal reading of the statute would lead to a conflict with existing law, an objectionable and unreasonable result which we cannot assume that the Legislature intended. *(Matter of Friedman-Kien v City of New York,* 92 AD2d 827, 828 [1st Dept 1983], *affd* 61 NY2d 923 [1984].) Recourse to the legislative history is therefore required.

The legislative materials prepared at the time that this amendment to the Civil Service Law was presented to the

New York City Council and the New York State Legislature fully support the construction given the statute by respondent Director of the New York City Department of Personnel. In 1982, the Chief Actuary of the New York City Retirement System prepared a fiscal note, as required under Legislative Law § 50, analyzing the impact of the proposed amendment on the city's Retirement System. We determined that about 5,000 members of the Retirement System were eligible for the "buy back" benefit under the proposed legislation and that the employer's contribution for these employees would cost the city an estimated $2,000,000. The report by Nicholas LaPorte, sponsor of the proposed amendment in the New York City Council, stated that the purpose of the legislation "is to allow returning members of the uniformed services to purchase back service credit lost by paying appropriate amounts of employee contributions into the annuity savings fund of the retirement system." No other purpose is mentioned in his report and the only cost cited is the $2,000,000 estimate from the city's Actuary. In his sponsoring memorandum, Senator Frank Padavan reported to his colleagues that "the cost to the system is approximately two million dollars" based on the city Actuary's estimate. No other fiscal implication was noted or discussed in the supporting memorandum. Despite the fact that Senator Padavan has subsequently taken the position that the amendment which he sponsored was intended to include "promotion eligibility, salary rate, days off and leave", the record before us reveals that no budgetary or fiscal analysis of these costs to the city was ever made prior to adoption of this bill by the New York City Council or the New York State Legislature, nor are these other purposes revealed.

Nowhere was it ever suggested to members of these law-making bodies in the preenactment materials that the bill would cost more than the estimated $2,000,000. While the dissent finds this omission inconclusive because the law did not then require analysis of any costs other than retirement costs, we deem the omission material and highly probative. The report to the Senate and the Assembly prepared by the State Division of the Budget criticized the $2,000,000 cost of the bill as "fiscally prohibitive". Had this bill also created other liability, this fact would surely have been raised by the Division of the Budget in its report as a further objection. We must conclude, therefore, that the majority of the legislators acted in reliance on these preenactment representations when they voted in favor of the bill.

To give this law the expansive reading now urged by appellants based on the postenactment statements of the bill's sponsor would be inconsistent with basic legislative principles. The postenactment statements of a member of the Legislature, even one who sponsored the law in question, are irrelevant as to the law's meaning and intent *(Civil Serv. Employees Assn. v County of Oneida,* 78 AD2d 1004, 1005 [4th Dept 1980], *lv denied* 53 NY2d 603 [1981]).

Finally, we find that this appeal is not foreclosed by our decision in *Higdon v New York City Civ. Serv. Commn.* (125 AD2d 1010 [1st Dept 1986]), as the dissent maintains. Our affirmance of the determination by the New York City Civil Service Commission to deny seniority credits to the petitioner in that case is not res judicata as to the issue raised herein. In *Higdon,* the Civil Service Commission overruled the city's Department of Personnel and adopted the petitioner's interpretation of Civil Service Law § 80 (8) as conferring seniority for the purpose of determining eligibility for promotion. Nevertheless, the Commission rejected the petititoner's claim, on the ground that the seniority for constructive service as a firefighter could not be used to enhance petitioner's standing on the eligible list for captain because seniority credits for that post were only given for experience as a lieutenant. Thus, the Civil Service Commission found that section 80 (8) was not applicable to the petitioner's case and, therefore, our affirmance did not extend to the correctness of the Civil Service Commission's reading of section 80 (8).

We also note that the Court of Appeals has held that it is error to dismiss the complaint in an action for declaratory relief when the court finds that the plaintiffs are not entitled to the declaration sought. *(Lanza v Wagner,* 11 NY2d 317, 334 [1962].) The court, in that case, should direct entry of a judgment in favor of the defendants, declaring what the court finds the law to be *(Sweeney v Cannon,* 30 NY2d 633, 634 [1972]). Concur—Carro, Asch and Rosenberger, JJ.

Murphy, P. J., and Kupferman, J., dissent in a memorandum by Kupferman, J., as follows: In 1975, New York City faced a financial crisis. As a result, the city was forced to institute a number of economy measures. Among them was the layoff of 5,900 uniformed civil service employees. Over the next five years, as its economic health recovered, the city hired back almost 4,800 of those laid off. In 1982, to help ameliorate the problems caused by the layoff, the New York

State Legislature enacted Civil Service Law § 80 (7).* It provides that those laid off who returned to their jobs "shall be deemed to have been in continuous service in determining seniority and length of service * * * provided, however, that for retirement purposes, a member receiving such service credit shall pay into the annuity savings fund * * * the amount * * * required to have been paid * * * for such service".

The city argues, and Supreme Court suggested, and now a majority of this court holds, that the above passage limits the granting of seniority credit to retirement and pension purposes. Plaintiffs-appellants, who include a rehired transit police officer and firefighter, contend the law grants seniority and credit not only for retirement purposes but also for promotion eligibility, salary rate, assignments and reassignments, and attendance and leave.

The plain meaning of the statute supports the position of the rehired transit police officers and firefighters. It says that those who returned to their jobs "shall be deemed to have been in continuous service". There are no qualifiers. The statute goes on: "provided, however, that for retirement purposes". This indicates that retirement was only one purpose of the statute, not the exclusive purpose.

The city agrees that the plain meaning supports appellants' interpretation. Nevertheless, it urges us to consider the legislative history, especially the accompanying memoranda. However, in statutory construction, when legislative intent is apparent from the language, courts need not consider the import of accompanying memoranda. *(Sega v State of New York,* 60 NY2d 183, 191.) Resort to extrinsic matter is inappropriate when statutory language is unambiguous. *(People v Graham,* 55 NY2d 144, 151.) The most persuasive evidence of meaning is words used by the Legislature. *(United States v American Trucking Assns.,* 310 US 534, 543.) And, when the language of a statute is plain, a court will not adopt a different construction absent clear legislative history contradicting the meaning of the words. *(United States v Holroyd,* 732 F2d 1122 [2d Cir 1984].)

The city reads the statute as only relating to retirement purposes. It looks to the Senate and Assembly memoranda accompanying the bill, as well as the City Council's home-rule message (a State constitutional requirement through which the Council requests certain legislation from the State Legisla-

---

* Renumbered section 80 (8) in 1985.

ture). These documents discuss the retirement aspect only. However, courts often recognize that the lack of words in the history of a statute supporting its plain meaning is not reason to depart from the language of the statute. *(See, United States v Perdue Farms,* 680 F2d 277 [2d Cir 1982].) In addition, it is likely the memoranda and home-rule message were not more encompassing because the statutory language is so obvious that the sponsor had no fear of misinterpretation.

The city points out that its Actuary sent a fiscal note to the Legislature estimating the cost of the bill at $2 million, and that this cost only covers the retirement benefits. The city cites this as evidence that other costs were not contemplated. At that time, however, costs other than retirement costs did not require a fiscal note. (Legislative Law § 50; this law has since been amended.) Thus, the lack of such a note proves nothing.

Moreover, other evidence supports the plaintiffs. A subsequent letter from the bill's sponsor, Senator Frank Padavan, agrees with their interpretation, as does a budget report from the State Division of the Budget and a legislative memorandum from the State Department of Civil Service. Also, a letter to the Governor from the New York Conference of Mayors and Municipal Officers opposing the bill makes clear they thought it applied to more than retirement payments. Furthermore, the New York City Civil Service Commission produced findings which are in accord with the police officers' and firefighters' reading. All the above, combined with the plain meaning, provide firm ground for appellants' position.

The city also claims that applying section 80 (7) beyond retirement benefits would prove too costly and complex, and therefore the Legislature could not have intended the law to confer those benefits. But, the effect of much legislation is expensive and complicated.

Another important factor is that the major question on appeal should be considered res judicata, thus preventing the city from prevailing. In a recent case, *Higdon v New York City Civ. Serv. Commn.* (125 AD2d 1010), we affirmed a Supreme Court ruling related to section 80 (7), the section at issue here. In that case the city had an opportunity to advance its argument by stating the same position it advocates now. It did not. Reasons of judicial economy and finality of decisions mitigate against allowing them to argue it in the instant case. A judgment is conclusive upon parties in subsequent cases involving the same cause of action both as to matters actually

litigated and those that might have been but were not. *(American Airlines v Transport Express,* 55 AD2d 513, *lv denied* 42 NY2d 802.)*

Supreme Court also held that appellants failed to exhaust their administrative remedies. The relevant labor contracts call for dispute resolution of layoffs through grievance and arbitration procedures. The Court of Appeals has found, however, that even if a contract calls for arbitration, sometimes public policy considerations override the exhaustion doctrine. *(See, Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614, 616-617.) This is such a case. Additionally, we have held that failure to exhaust administrative remedies is not fatal to judicial review where the only question is one of statutory construction. *(Byer v City of New York,* 50 AD2d 771.) Both parties argue, and we agree, that the exhaustion doctrine should not apply here.

Accordingly, we would reverse, reinstate the complaint and declare that the seniority rights granted pursuant to Civil Service Law § 80 (7) are not limited to retirement and pension purposes.