OPINION OF THE COURT
 

 Ciparick, J.
 

 This appeal brings up for review two issues: (1) whether public policy bars a cooperative apartment corporation from indemnifying one of its directors for punitive damages imposed on the director who, in violation of various civil rights laws, denies a proposed tenant’s sublease application on the basis of race and retaliates against a shareholder for opposing the denial; and (2) whether, under the same facts, Business Corporation Law § 721 bars indemnification where the underlying judgment establishes that the director acted in bad faith. We conclude that, in these circumstances, indemnification is prohibited.
 

 Plaintiff, Nicholas Biondi, is the former president of the board of directors of defendant Beekman Hill House Apartment Corporation. In 1995, Simone Demou, a shareholder of Beekman, informed Biondi that she intended to sublease her apartment to Gregory and Shannon Broome, a financially eligible couple. Biondi assured Demou that he would meet with Gregory Broome and that, in keeping with the usual practice, a full board interview would not be required. Nevertheless, after Biondi’s meeting with Gregory Broome, Beekman’s manag
 
 *662
 
 ing agent advised the Broomes that a full board meeting was necessary. Prior to that meeting, Biondi informed another board member that Gregory Broome was African-American, and told yet another board member that he felt “uneasy” about him. The board unanimously denied the Broomes’ application and issued a notice of default against Demou for “objectionable conduct” arising from her accusations of racism against Biondi and the board.
 

 On January 30, 1996, Biondi, represented by Beekman’s counsel, commenced a defamation action against Demou in Supreme Court. On February 2, 1996, the Broomes filed a lawsuit in the United States District Court for the Southern District of New York, alleging that Beekman and its directors (the Beekman defendants), including Biondi, violated various State and Federal civil rights laws by denying their sublease application based on Gregory Broome’s race. The Beekman defendants counterclaimed against the Broomes and brought a third-party action against Demou for injurious falsehoods. Demou removed Biondi’s defamation action to Federal court, consolidated it with the Broomes’ Federal action and asserted counterclaims against the Beekman defendants for retaliation.
 

 After trial, the jury found that the Beekman defendants, including Biondi both personally and in his official capacity, violated the Federal Fair Housing Act (42 USC §§ 1981, 1982) and New York Human Rights Law (Executive Law § 296 [5]). The jury awarded the Broomes $230,000 in compensatory damages and $410,000 in punitive damages, $125,000 of which was assessed individually against Biondi. As to Demou, the jury found that Biondi and the Beekman defendants violated her rights under the Federal Fair Housing Act and the New York Human Rights Law, breached their fiduciary duties to her and tortiously interfered with her sublease agreement with the Broomes. The jury awarded Demou a total of $107,000 in compensatory damages and $57,000 in punitive damages, $29,000 of which was assessed individually against Biondi.
 

 Following the verdict, the Beekman defendants moved, in part, for a new trial. In denying the motion, the Federal District Court concluded that: (1) the evidence supporting Demou’s breach of fiduciary duty claim established that “the Beekman Board members acted in bad faith and with a purpose that was not in the best interests of the cooperative”; and (2) the evidence established that the Beekman defendants acted “willfully or maliciously when they rejected the Broomes’ sublet application * * * and retaliated against Demou for trying to
 
 *663
 
 oppose the Board’s actions”
 
 (Broome v Biondi,
 
 17 F Supp 2d 211, 220, 228 [SD NY]). Biondi and the Beekman defendants appealed to the United States Court of Appeals for the Second Circuit. At a settlement conference, Biondi and Beekman’s directors agreed to limit their liability to their respective punitive damage awards. After Biondi failed to comply with the settlement, a second conference ensued, at which the parties agreed to reduce Biondi’s punitive damage contribution to $124,000.
 

 Biondi subsequently sued Beekman for indemnification under article VII of its by-laws, and Beekman moved to dismiss Biondi’s complaint for failure to state a cause of action pursuant to CPLR 3211. Supreme Court denied Beekman’s motion. It held that Beekman’s by-laws authorized indemnification for directors who act in good faith, and the “mere fact” that the Federal jury found Biondi liable for violating the Broomes’ civil rights was not “dispositive” of that issue. It further held that the public policy prohibition against indemnification for punitive damages did not apply because the settlement agreement did not clearly identify Biondi’s damages as punitive.
 

 The Appellate Division unanimously reversed and dismissed the complaint. The Court held that Biondi’s settlement agreement limited his liability to punitive damages and that indemnification for punitive damages is prohibited by public policy. The Court also held that Business Corporation Law § 721 barred indemnification, where the jury in the underlying action found that Biondi had acted in bad faith toward the Broomes and Demou. We now affirm.
 

 Analysis
 

 Under the facts of this case, Biondi cannot obtain indemnification for the punitive damages imposed for his acts of bad faith against Beekman.
 
 [1]
 
 In the context of insurance indemnification, “the rule to be applied with respect to a punitive damage award made in a Civil Rights Act action is that coverage is proscribed as a matter of public policy”
 
 (Hartford Acc. & Indem. Co. v Village of Hempstead,
 
 48 NY2d 218, 228). Indemnification “defeats the purpose of punitive damages, which is to punish and deter others from acting similarly”
 
 (id.,
 
 at 226;
 
 see,
 
 
 *664
 

 Zurich Ins. v Shearson Lehman Hutton,
 
 84 NY2d 309, 316;
 
 Home Ins. Co. v American Home Prods. Corp.,
 
 75 NY2d 196, 200).
 

 So too, Beekman should not bear the burden of indemnifying its director for punitive damages imposed for acts of bad faith. Biondi’s racial discrimination against the Broomes and retaliation against Demon is precisely the type of conduct for which public policy should preclude indemnification. The jury in the Federal action found that Biondi willfully violated the Broomes’ and Demou’s civil rights, and it imposed personal liability on Biondi. Indeed, the punitive damages assessed against Biondi were greater than those against any other director, confirming that Biondi was singled out for punishment. To allow Biondi now to shift that penalty to Beekman would eviscerate the deterrent effect of punitive damages, and “violate the ‘fundamental principle that no one shall be permitted to take advantage of his own wrong’ ”
 
 (Public Serv. Mut. Ins. Co. v Goldfarb,
 
 53 NY2d 392, 400, quoting
 
 Messersmith v American Fid. Co.,
 
 232 NY 161, 165).
 

 Although Biondi acknowledges that public policy prohibits insurer indemnification for punitive damages, he argues that the prohibition does not apply to this case because, unlike New York’s Insurance Law, the Business Corporation Law evinces a clear legislative policy of indemnifying corporate directors who act in good faith. While we recognize that “our determination of public policy * * * is limited by [existing] statutes”
 
 (Hartford Acc. & Indem. Co. v Village of Hempstead, supra,
 
 48 NY2d, at 225), we conclude that neither the Business Corporation Law nor Beekman’s by-laws entitle Biondi to indemnification, where the underlying judgment establishes that he acted in bad faith.
 

 Business Corporation Law § 722 (a) and (c) allow corporations to indemnify directors against third-party actions and derivative suits, respectively. Section 722 (a) permits indemnification against judgments, fines, settlement payments and reasonable litigation expenses, while section 722 (c) limits indemnification to settlement payments and litigation expenses. In both cases, the standard of conduct is the same: a corporation may indemnify a director who acts “in good faith,
 
 for a purpose which he reasonably believed to be in * * * the best interests of the
 
 corporation” (Business Corporation Law § 722 [a], [c] [emphasis added]). Termination of an action by a judgment or settlement does not, by itself, “create a presumption” that the standard of conduct has not been satisfied (Business Corporation Law § 722 [b]).
 

 
 *665
 
 Business Corporation Law former § 721 previously made these statutory indemnification provisions exclusive. However, in 1986, in an attempt to “attract” capable officers and directors, the Legislature amended section 721 to expand indemnification to include any additional rights conferred by a corporation in its certificate of incorporation or by-laws, provided that “no indemnification may be made to or on behalf of any director or officer
 
 if a judgment or other final adjudication adverse to the director or officer establishes that his acts were committed in bad faith
 
 or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated” (Business Corporation Law § 721 [emphasis added]; Governor’s Approval Mem, Bill Jacket, L 1986, ch 513, § 1, at 9, reprinted in 1986 McKinney’s Session Laws of NY, at 3171-3172).
 

 While section 721’s nonexclusivity language
 
 broadens
 
 the scope of indemnification, its “bad faith” standard manifests a public policy limitation on indemnification
 
 (see,
 
 Business Corporation Law former § 721 [Joint Legis Comm to Study Revision of Corporation Laws, Explanatory Mem, Bill Jacket, L 1961, ch 855, at 266]; Note, Rosh,
 
 New York's Response to Director and Officer Liability Crisis: A Need to Reexamine the Importance of D & O Insurance,
 
 54 Brook L Rev 1305, 1323, 1325 [1989];
 
 cf., Hartford Acc. & Indem. Co. v Village of Hemp-stead, supra,
 
 48 NY2d, at 225 [“good faith” language in General Municipal Law § 52, which authorizes a municipality to purchase liability insurance, suggests that the “Legislature did not contemplate insurance against punitive damages”];
 
 Waltuch v Conticommodity Servs.,
 
 88 F3d 87, 90-91 [2d Cir 1996] [recognizing public policy restrictions on indemnification under Delaware’s analogous nonexclusivity provision]). That limitation is reflected in the statutory indemnification provisions, as well as Beekman’s by-laws, both of which restrict indemnification to acts of “good faith” that are “reasonably believed to be in * * * the best interests of the corporation” (Business Corporation Law § 722 [a], [c]).
 
 [2]
 

 
 *666
 
 With this background, we consider whether the adverse Federal judgment establishing Biondi’s bad faith toward the Broomes and Demou precludes indemnification under Business Corporation Law § 721. Relying on section 722, Biondi argues that the Federal jury’s finding of bad faith is not dispositive of his actions toward Beekman, and that he is entitled to prove that he acted in Beekman’s interest. Beekman counters that a finding of bad faith toward a third party is, by itself, sufficient to bar indemnification under Business Corporation Law § 721.
 

 Reading sections 721 and 722 together and applying them harmoniously and consistently as we are required to do (McKinney’s Cons Laws of NY, Book 1, Statutes § 221), we hold that the key to indemnification is a director’s good faith
 
 toward the corporation
 
 and that a judgment against the director, standing alone, may not be dispositive of whether the director acted in good faith
 
 (see,
 
 Business Corporation Law §§ 721, 722 [a], [b];
 
 see also, Titley v Amerford Intl. Corp.,
 
 249 AD2d 380, 381;
 
 cf., Waltuch v Conticommodity Seros., supra,
 
 88 F3d, at 95 [no indemnification under Delaware law for directors who fail to act in “good faith and in a manner reasonably believed to be in * * * the best interest of the corporation” (internal quotations omitted)]). However, we conclude, as a matter of law, that in this case it
 
 is
 
 dispositive.
 

 Based on the entire record before us, nothing in Biondi’s conduct can be construed as being undertaken in good faith, for a purpose “reasonably believed” to be in the best interests of Beekman. By intentionally denying the Broomes’ sublease application on the basis of race, Biondi knowingly exposed Beekman to liability under the civil rights laws. Indeed, a Beekman board member warned Biondi that if he felt “uneasy because Mr. Broome is black, we will be sued.” Biondi’s willful racial discrimination cannot be considered an act in the corporation’s best interest.
 

 Nor was it in Beekman’s best interest for Biondi to breach his fiduciary duty to Demou, Beekman’s shareholder. The Federal District Court in the underlying action instructed the jury that if it found that “the Board members made determinations in bad faith and with a purpose that was not in the best interest of all the people they represent, then you must find-that the Board breached its fiduciary duty” to Demou. The jury
 
 *667
 
 found that Biondi, acting in bad faith, breached his fiduciary-duty to Demou. That finding was later upheld by the District Court, which denied Biondi’s motion for a new trial on the ground that “the jury could reasonably find that the Beekman Board members acted in
 
 bad faith and with a purpose that was not in the best interests of the
 
 cooperative”
 
 (Broome v Biondi, supra,
 
 17 F Supp 2d, at 220 [emphasis added]). Because the underlying Federal judgment establishes that Biondi’s acts were committed in bad faith, Biondi is not entitled to indemnification and cannot relitigate the good faith versus bad faith issue here (Business Corporation Law § 721).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . We agree with the Appellate Division’s interpretation of the settlement agreement. The amount next to each director’s name in the agreement corresponded to the amount of punitive damages awarded, and Biondi failed to submit proof disputing that amount.
 

 [2]
 

 . Article VII of Beekman’s by-laws provides, in pertinent part:
 
 “To the extent allowed hy law,
 
 the Corporation shall also indemnify any person, made, or threatened to be made, a party to an action or proceeding * * * whether civil or criminal, including an action by or in the right of any other corporation, domestic or foreign, which he served in any capacity at the request of the Corporation by reason of the fact that he * * * was a director or officer of the Corporation or served it in any capacity against judgments, fines, amounts paid in settlement, and reasonable expenses, including attorneys’ fees * * *
 
 if such director or officer acted in good faith, for a
 
 
 *666
 

 purpose which he reasonably believed to be in the best interests of the Corporation
 
 and, in criminal actions or proceedings, in addition, had no reasonable cause to believe that his conduct was unlawful” (emphasis added).