*738 OPINION OF THE COURT
Anthony Cannataro, J.
In this action seeking reimbursement for assigned no-fault benefits, this court must answer the question of whether an insurer complies with the requirement of 11 NYCRR 68.6 to pay the “prevailing fee in the geographic location of the provider” when it reimburses the provider for health services rendered in another state in accordance with that state’s no-fault fee schedule.
Factual and Procedural Background
On February 23, 2012, Vincent Molino was operating an automobile when he was involved in a four-car accident caused by an intoxicated driver. Following the accident, Molino received treatment from plaintiff Surgicare Surgical for knee, lower back, and neck injuries. Surgicare performed arthroscopic surgery on Molino at a location in New Jersey approximately one year after the accident.
Plaintiff, as the assignee of Molino, submitted a claim on May 6, 2013 to defendant National Interstate Insurance Company in the amount of $10,800 for the surgery. Two days later, defendant sent a verification form to plaintiff requesting additional information. Plaintiff replied to the verification form by way of a “medical necessity” letter dated May 31, 2013. Defendant then issued payment in the amount of $5,996.67, but denied the remaining portion of plaintiffs claim. In a standard “Denial of Claim” form, dated June 13, 2013, defendant indicated that plaintiffs fees were “not in accordance with fee schedules” and were “reduced in accordance with the New Jersey No-Fault Ambulatory Surgery Fee Schedule guidelines.” Plaintiff commenced this action to recover the remainder of its claim. Despite defendant’s payment of $5,996.67, plaintiff alleges in its complaint that “there [was] no payment of the subject bill” (complaint ¶ 15).
Defendant now moves to dismiss. Plaintiff opposes the motion and cross-moves for summary judgment on its complaint.
Arguments
In support of its motion to dismiss, defendant argues that, under 11 NYCRR 68.6, it was required to pay the “prevailing fee in the geographic location of the provider.” Since health care services were rendered in New Jersey, a state which has promulgated a fee schedule under its no-fault laws, defendant *739 contends that the reimbursement provided for in New Jersey’s fee schedule constitutes the “prevailing fee” under New York’s section 68.6. Defendant concludes, therefore, that it properly denied so much of plaintiffs claim that exceeded the maximum charge under New Jersey’s fee schedule for the services in question. In support of its position, defendant annexes to its reply papers an affidavit from a professional medical coder, Lisa Acuna, who states that defendant properly calculated the payment amount for plaintiffs claim under New Jersey’s fee schedule. Lastly, defendant argues that dismissal is warranted because plaintiff is estopped from seeking the remainder of its claim based on the doctrine of accord and satisfaction.
In opposition, plaintiff asks preliminarily that this court deem defendant’s motion to dismiss as one for summary judgment pursuant to CPLR 3212 (c). As to the merits, plaintiff does not dispute that New Jersey’s fee schedule, if applicable, would bar plaintiffs claim. However, plaintiff contends that New Jersey’s fee schedule does not apply because the term “prevailing fee” in the regulation is not synonymous with “fee schedule.” Plaintiff argues that in contrast to New Jersey’s version of section 68.6, which expressly limits out-of-state reimbursements to those rates set forth in the host state’s fee schedule, New York’s rule for reimbursement of out-of-state services does not refer to a local “fee schedule.” By omitting specific reference to a fee schedule, plaintiff argues, New York’s Legislature refused to limit payments for out-of-state services to the amounts set forth in another state’s fee schedule. Plaintiff further contends that this court would exceed its authority by interpreting the plain language of section 68.6 to require that an insurer pay anything other than the “prevailing fee of the geographic location of the provider.”
Despite defendant’s submission of the Acuna affidavit in its reply papers, plaintiff argues that defendant’s failure to include an affidavit from a competent medical coder in its initial moving papers warrants denial of the instant motion. Additionally, plaintiff contends that defendant failed to timely issue its denial and neglected to preserve its fee schedule defense when issuing the standard denial form. Lastly, plaintiff argues that the “partial” payment of $5,996.67 on plaintiffs $10,800 claim effectively estops defendant from denying any unpaid portion of the claim.
In support of its cross motion for summary judgment, plaintiff argues that it has established timely mailing of its claim and *740 that payment on the claim is overdue. Defendant opposes the cross motion.
Discussion
On a motion to dismiss pursuant to CPLR 3211, the court affords the pleadings a liberal construction, giving the non-moving party the benefit of every favorable inference, and determines only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]). However, allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence, are not presumed to be true (see Biondi v Beekman Hill House Apt. Corp., 257 AD2d 76, 81 [1st Dept 1999], affd 94 NY2d 659 [2000]). In such a case, “[a] CPLR 3211 dismissal may be granted where documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law” (see Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 571 [2005] [internal quotation marks omitted]).
Two procedural issues arise in the context of defendant’s motion to dismiss. First, plaintiffs complaint alleges that “there [was] no payment of the subject bill” (complaint ¶ 15), however, this statement is not only refuted by defendant’s evidence of a $5,996.67 payment to plaintiff, but also by plaintiffs admission that it received this payment from defendant. Plaintiffs allegation of no payment is flatly contradicted by the evidence and, thus, clearly erroneous. As such, plaintiff can only seek the unpaid portion on its $10,800 claim.
Secondly, to the extent that plaintiff claims defendant neglected to annex a qualifying affidavit from a medical coder to its initial moving papers, defendant later cured this defect in its reply papers by way of the affidavit from Lisa Acuna. Acuna, who is a certified medical coder, avers that defendant paid the exact amount permitted under New Jersey’s fee schedule for the health services provided by plaintiff. Although plaintiff could have responded to the affidavit in its cross motion, it failed to do so. Thus, plaintiff had—but waived—an opportunity to dispute those assertions (see Held v Kaufman, 91 NY2d 425, 430 [1998] [defenses raised for the first time in reply papers on a motion to dismiss were properly considered without danger of prejudice where plaintiff was afforded opportunity to respond]). In sum, while the parties disagree about whether New Jersey’s fee schedule applies under these circumstances, neither party *741 disputes that, if New Jersey’s fee schedule does apply, defendant complied with section 68.6.
With respect to plaintiffs request to convert this motion to one for summary judgment, this court declines to deem defendant’s instant motion as one for summary judgment pursuant to CPLR 3211 (c). Although resolution of a purely legal question is appropriate on a motion for summary judgment (see Mihlovan v Grozavu, 72 NY2d 506, 508 [1988]), the court may also decide a motion to dismiss pursuant to rule 3211 when it is premised entirely on an issue of statutory interpretation (see McKechnie v Ortiz, 132 AD2d 472 [1st Dept 1987]) or when the sufficiency of the pleadings poses a question of law (see e.g. Rosner v Paley, 65 NY2d 736, 738 [1985]). Since no issues of fact need to be determined in order to resolve the instant motion, this court is left to answer a question of law, that is, whether defendant complied with section 68.6 when it limited payment for the health services performed by plaintiff to the amount allowable under New Jersey’s fee schedule. Thus, some interpretation of the regulation at issue is called for.
In a claim brought under New York’s Comprehensive Motor Vehicle Insurance Reparations Act, otherwise referred to as the “No-Fault Law” (see Insurance Law § 5101 et seq.), a provider’s reimbursement for eligible health services performed in New York “shall not exceed the charges permissible under [the fee schedule established by the New York State Workers’ Compensation Board]” (see Insurance Law § 5108 [a]). Under subdivision (c), “[n]o provider of health services . . . may demand or request any payment in addition to the charges authorized [under the fee schedule]” (Insurance Law § 5108 [c]).
Responsibility for administering the Insurance Law rests with the Superintendent of Insurance who has “broad power to interpret, clarify, and implement the legislative policy” (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 101 AD3d 53, 64 [2d Dept 2012] [internal quotation marks omitted]; see Insurance Law § 301). In the no-fault context, section 5108 (b) of the Insurance Law empowers the superintendent to “promulgate rules and regulations implementing and coordinating the provisions of [the No-Fault Law].” These rules, found in part 68 of the New York Insurance Department Regulations, “govern[ ] the charges for professional health services” (see Great Wall Acupuncture v GEICO Gen. Ins. Co., 16 Misc 3d 23, 25-26 [App Term, 2d Dept 2007]).
Within this regulatory framework, the Insurance Department has promulgated section 68.6 which provides that “[i]f a profes *742 sional health service ... is performed outside New York State, the permissible charge for such service shall be the prevailing fee in the geographic location of the provider” (11 NYCRR 68.6).
The question of exactly what constitutes the “prevailing fee” in this context appears to be one of first impression since neither of the parties nor this court have located authority interpreting section 68.6 in relation to a state which utilizes a no-fault fee schedule. However, the Superintendent of Insurance has issued a formal opinion interpreting section 68.6 in the context of a foreign jurisdiction that apparently did not have a fee schedule. The opinion, which involved a question of licensure for physical therapists providing health services in Guatemala, specifically cites the section at issue and states:
“As to the amount of the reimbursement, where the health services are provided outside of New York State . . . [t]he dollar amount of the reimbursement for physical therapy services (or other professional health services) performed on an eligible injured person under a New York No-Fault insurance policy in Guatemala is determined by the permissible cost for such services in Guatemala” (Ops Gen Counsel NY Ins Dept No. 03-04-03 [Apr. 2003], 2003 WL 24312368 [US], *2 [emphasis added]).
The Superintendent’s use of the word “permissible” is significant as it strongly suggests that reimbursement for health services performed in a foreign jurisdiction may be regulated by that jurisdiction’s laws, including a governing no-fault regime. Indeed, the principle of limiting reimbursements to “permissible” amounts is mirrored in the section of the Insurance Law that codifies the No-Fault Law’s salient feature of explicitly restricting reimbursement for health services performed in New York to the amounts allowable by this State’s fee schedule (see Insurance Law § 5108 [a]); therefore, it is only logical that the same principle should apply to foreign jurisdictions. Consistent with the use of “permissible” in the core provision of the No-Fault Law, the Superintendent has reasonably interpreted the language of section 68.6 to require that an insurer pay for any health service performed in a locale outside of New York at the permissible cost for that location. As such, the Superintendent’s interpretation of its own regulations is entitled to deference (LMK Psychological Servs., P.C. v State Farm Mut. Auto. Ins. Co., 12 NY3d 217, 223 [2009] [“the (Insurance) Superintendent’s ‘interpretation (of its own regulations) if not irrational or un *743 reasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision’ ”]).
In addition, the language of the preceding subsection within section 68.6 also utilizes the term “prevailing fee.” That subsection, section 68.5 (b), states that
“If a professional health service is performed which is [eligible for no-fault benefits], but is not set forth in fee schedules adopted or established by the superintendent, and: . . .
“(b) if the superintendent has not adopted or established a fee schedule applicable to the provider, then the permissible charge for such service shall be the prevailing fee in the geographic location of the provider subject to review by the insurer for consistency with charges permissible for similar procedures under schedules already adopted or established by the superintendent” (11 NYCRR 68.5 [b] [emphasis added]).
Section 68.5 (b) requires that the insurer pay the “prevailing fee in the geographic location of the provider” only ¿/this State’s fee schedule has not established a permissible charge for the health service or has not adopted the type of provider who seeks reimbursement for no-fault benefits. In other words, for any claimed health service, the insurer must look first to the fee schedule in determining the proper reimbursement amount. It is only after the insurer concludes that the fee schedule does not apply that it may look to the “prevailing fee” in the provider’s location. The provider’s likelihood of receiving the “prevailing fee” is further conditioned upon the insurer’s prerogative to re-categorize the particular health service to fit under existing fee schedules. By looking first to the application of a fee schedule, section 68.5 employs a logical approach in which the insurer pays a “prevailing fee,” as plaintiff defines that term, only after all possible fee schedule applications have been exhausted.
Both the Insurance Department’s opinion and section 68.5 (b)’s formula for applying the “prevailing fee” comport with the policy goals underlying the legislature’s adoption of a fee schedule. The purpose of a fee schedule is “to significantly reduce the amount paid by insurers for medical services, and thereby help contain the no-fault premium” (Goldberg v Corcoran, 153 AD2d *744 113, 118 [2d Dept 1989] [internal quotation marks omitted], citing Governor’s Program Bill, 1977 McKinney’s Session Laws of NY at 2449; Governor’s Mem in Support of Assembly Bill 7781-A). Moreover, per Insurance Department regulation, the express purpose of the fee schedule was to “contain . . . the cost of no-fault insurance” (see 11 NYCRR 68.0). Like New York, New Jersey passed similar no-fault legislation as a “cost-containment initiative” (see Casinelli v Manglapus, 181 NJ 354, 360, 858 A2d 1113, 1116 [2004]). In furtherance of policy goals akin to New York’s, New Jersey’s Department of Insurance has promulgated a medical fee schedule (see 11 NJ Admin Code 11:3-2.9). Thus, the “permissible” charge for health services rendered in New Jersey are limited by the maximum amounts permitted under New Jersey’s fee schedule.
Based on the foregoing, this court holds that, when services are rendered outside of New York but in a jurisdiction which utilizes a fee schedule, the insurer complies with section 68.6 by paying the “permissible” charge for that particular medical service, that is, the amount permitted by that jurisdiction’s fee schedule. There being no dispute that defendant issued payment on plaintiff’s claim in accordance with New Jersey’s fee schedule, plaintiff is not entitled to more. Since plaintiffs action is based entirely on its claim of entitlement to reimbursement in excess of New Jersey’s “permissible” charge, the relief sought in the complaint must be denied and the action dismissed.
Contrary to plaintiffs position, this court neither exceeds its “jurisdiction” nor subverts the plain language of section 68.6 by holding that an insurer complies with section 68.6 when the reimbursement amount is consistent with another state’s fee schedule. Rather, this court merely adopts a reading of section 68.6 that comports with both the Insurance Department’s interpretation of its own regulation, as well as the policy goals underlying New York’s (not to mention, New Jersey’s) No-Fault Law.
Aside from the core objective of “providing] a tightly timed process of claim, disputation and payment” (see LMK Psychological Servs., P.C., 12 NY3d at 222), another important goal of the no-fault laws was also to “reduce the burden on the courts” (see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007] [internal quotation marks omitted]). If this court were to accept plaintiff’s interpretation of section 68.6, rather than “reduce the burden on the courts,” similar *745 no-fault disputes would routinely call upon trial courts to conduct evidentiary hearings on local billing practices to determine the “prevailing fee” in a neighboring location notwithstanding the fact that such a jurisdiction has already established its own legally permissible fee. Such a situation would undoubtedly subvert the No-Fault Law’s core objective of creating a speedy process of claim, dispute resolution, and, ultimately, payment.
Equally important, the goals of consistency and fairness are undermined when injured parties, or their provider-assignees, can be reimbursed for the same health services at different rates from those permitted under either New York’s or even another state’s fee schedule simply because the services were rendered outside of New York but are to be paid in this State. Plaintiffs proposed reimbursement scheme would only frustrate the purposes of both jurisdictions’ no-fault laws because providers would be incentivized to treat New York patients in other jurisdictions hoping to receive more for performing the same health service outside of New York’s borders.
Turning to plaintiffs remaining contentions, this court finds no merit in plaintiffs argument that defendant’s denial of claim was untimely. An explicit schedule for claim submission, response, and decision is provided in Insurance Department regulations (see 11 NYCRR 65-1.1, 65-2.4 [c]; 65-3.5 [a], [b]; 65-3.8 [c]). Although it is well-established that “[an insurer] that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim” (see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 318 [2007]), if the insurer seeks additional verification, the 30-day window is tolled until the insurer receives the requested information (see Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556, 563 [2008]). Here, plaintiff made its claim on May 6, 2013, but defendant sent back a verification form two days later. The 30-day window was therefore tolled until defendant received the verification information it requested. Plaintiff admittedly submitted this information by way of a medical necessity letter on May 31, 2013. Given that defendant issued the denial of claim form on June 13, 2013, which was well within 30 days of plaintiffs medical necessity letter, defendant’s denial was timely.
Plaintiff further contends that, even assuming timeliness of its denial, defendant nevertheless failed to preserve its billing practices defense. However, an insurer preserves such a defense *746 merely by checking the “fees . . . not in accordance with the fee schedule” box on the standard denial form (Megacure Acupuncture, P.C. v Lancer Ins. Co., 41 Misc 3d 139[A], 2013 NY Slip Op 51994[U], *3 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]; Arco Med. NY, P.C. v Lancer Ins. Co., 37 Misc 3d 136[A], 2012 NY Slip Op 52178[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]). Not only did defendant check the appropriate box in its denial of plaintiffs claim, but it also specified the basis for the denial, namely, that plaintiffs reimbursement was “reduced in accordance with the New Jersey No-Fault Ambulatory Surgery Fee Schedule guidelines.”
Lastly, plaintiffs argument that defendant’s partial payment on the claim somehow indicates that defendant was satisfied with the entirety of the claim is unavailing (see 11 NYCRR 65-3.8 [d] [“Where an insurer denies part of a claim, it shall pay benefits for the undisputed elements of the claim. Such payments shall be made without prejudice to either party” (emphasis added)]).
This court has considered the remainder of plaintiffs contentions and finds them to be without merit.
Accordingly, it is ordered that defendant’s motion is granted and the complaint is dismissed; and it is ordered that plaintiffs cross motion is denied in its entirety.