J.P. Morgan Sec., Inc. v Vigilant Ins. Co. (2018 NY Slip Op 06146)





J.P. Morgan Sec., Inc. v Vigilant Ins. Co.


2018 NY Slip Op 06146


Decided on September 20, 2018


Appellate Division, First Department


Andrias, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 20, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr.J.P.
Rosalyn H. Richter
Richard T. Andrias
Marcy L. Kahn, JJ.


600979/09 6735 

[*1]J.P. Morgan Securities, Inc., et al., Plaintiffs-Respondents,
v
Vigilant Insurance Company, et al, Defendants-Appellants.



Defendants appeal from a judgment of the Supreme Court,
New York County (Charles Ramos, J.), entered August 14, 2017, awarding plaintiffs sums of money, including prejudgment interest, as against defendant insurers Vigilant Insurance Company, The Travelers Indemnity Company and Federal Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and Liberty Mutual Insurance Company and from the order of the same court and Justice, entered April 17, 2017, as amended by the order of the same court and Justice, entered on or about August 11, 2017.




Holwell Shuster & Goldberg LLP, New York (James M. McGuire, Daniel M. Sullivan and Gregory Dubinsky of counsel), and DLA Piper LLP (US), New York (Joseph G. Finnerty III, Megan Shea Harwick and Eric S. Connuck of counsel), for Vigilant Insurance Company and
Federal Insurance Company, appellants.
Kaufman Borgeest & Ryan LLP, New York (Scott A. Schechter, Andrew E. Oldis and Matthew Mawby of counsel), for Liberty Mutual Insurance Company, appellant.
Drinker Biddle & Reath LLP, Philadelphia, PA (David F. [*2]Abernethy of the bar of the State of New Jersey and the State of Pennsylvania, admitted pro hac vice, of counsel), and Drinker Biddle & Reath LLP, New York (Marsha J. Indych of counsel), for The Travelers Indemnity Company, appellant.
D'Amato & Lynch, LLP, New York (Kevin J. Windels, Luke D. Lynch and Liza A. Chafiian of counsel), for National Union Fire Inssurance Company of Pittsburgh, PA, appellant.
Clyde & Co. US LLP, New York (Edward J. Kirk, Gabriela Richeimer and Matthew Prutting of counsel), for Certain Underwritters at Lloyd's, London, appellant.
Landman Corsi Ballaine & Ford P.C., New York (William Ballaine of counsel), for American Alternative Insurance Corporation, appellant.
Proskauer Rose LLP, New York (Steven E. Obus and Seth Schaffer of counsel), for respondents.



ANDRIAS, J.


In this insurance dispute arising out of the insured's monetary settlement of a Securities and Exchange Commission proceeding and related private litigation predicated on the insured's violations of federal securities laws, we conclude that defendant insurers should be granted summary judgment declaring that plaintiffs are not entitled to coverage for the portion of the SEC disgorgement payment, $140 million, allegedly representing the improper profits acquired by third-party hedge fund customers, at issue in this appeal.[FN1]
In 2003, the SEC began an investigation to determine whether Bear Stearns violated securities laws between 1999 and September 2003 by knowingly facilitating "late trading" and deceptive "market timing" for certain hedge fund customers, and affirmatively assisting those customers in evading detection, thereby enabling them to earn hundreds of millions of dollars in profits at the expense of mutual fund shareholders. In 2006, the SEC notified Bear Stearns that it intended to institute civil proceedings against it seeking monetary sanctions of $720 million.
In March 2006, after Bear Stearns made a formal offer of settlement, the SEC issued an "Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings and Imposing Remedial Sanctions" in which Bear Stearns, "without admitting or denying the findings [made pursuant to its offer of settlement]," agreed to pay "disgorgement in the total amount of $160,000,000" and "civil money penalties in the amount of $90,000,000." After defendant insurers refused to indemnify Bear Stearns, plaintiffs commenced this action for breach of contract and a declaration that defendants have a duty to indemnify Bear Stearns, asserting that all the claims fall within the definition of "Loss" under the subject insurance policies.
In a prior appeal, this Court held that, as a matter of public policy, Bear Stearns could not [*3]seek recoupment of any portion of the $160 million disgorgement payment and dismissed the complaint (91 AD3d 226 [1st Dept 2011]). The Court of Appeals reversed and reinstated the complaint, stating that "the Insurers have not met their heavy burden of establishing, as a matter of law on their CPLR 3211 dismissal motions, that Bear Stearns is barred from pursuing insurance coverage under its policies" (21 NY3d 324, 338 [2013]).
While recognizing that other courts, as a matter of contract interpretation or public policy, have held that the risk of being ordered to disgorge "ill-gotten gains" is not insurable, the Court of Appeals, referencing Bear Stearns's argument that the rule "should apply only where the insured requests coverage for the disgorgement of its own illicit gains," stated that "the documentary evidence does not decisively repudiate Bear Stearns' allegation that the SEC disgorgement payment amount was calculated in large measure on the profits of others" (21 NY3d at 336). With respect to the public policy prohibition barring an insured from seeking indemnification for intentionally harmful conduct, the Court found that "[t]he SEC order, while undoubtedly finding Bear Stearns' numerous securities laws violations to be willful, does not conclusively demonstrate that Bear Stearns also had the requisite intent to cause harm" (21 NY3d at 335).
As to the personal profit exclusion, which bars coverage for claims against the insured "based upon or arising out of the Insured gaining in fact any personal profit or advantage to which the Insured was not legally entitled," the Court found that "[b]ecause Bear Stearns alleges, and the SEC order does not conclusively refute, that its misconduct profited others, not itself, this exclusion does not defeat coverage under CPLR 3211." As to the prior knowledge exclusion in the Lloyd's policy, which negates coverage for any claim arising from a wrongful act committed before March 21, 2000 (the effective date of the Lloyd's policy) if "any officer" of Bear Stearns, by that date, "knew or could have reasonably foreseen" that such wrongful act could lead to a claim, the Court agreed with the motion court that " numerous disputed factual assertions remain concerning Bear Stearns' knowledge of the relevant facts prior to March 21, 2000, and whether a person in Bear Stearns' position could have reasonably foreseen that those facts might be the basis of a claim under the Policies' (2010 NY Slip Op 33799[U], *12)."[FN2]
In the April 2017 order (57 Misc 3d 171), the motion court granted plaintiffs' motions for summary judgment and denied the defendants' motions for summary judgment. The Court found that (i) based on the broad definition in the policy, the $140 million disgorgement payment at issue constituted a covered loss because it represented third-party gains; (ii) the public policy exception for loss arising out of intentionally harmful conduct did not bar coverage because nothing indicated that Bear Stearns deliberately intended to cause injury to mutual fund investors, and the hearsay statements by Bear Stearns's employees that customers' late trading and market timing transactions harmed mutual fund investors were insufficient to raise a triable issue of fact; [*4](iii) the personal profit exclusion did not bar coverage because it applied to claims based upon or arising out of the insured "gaining in fact any personal profit or advantage" to which the insured was not legally entitled and here the profit accrued to third parties and Bear Stearns did not derive any greater compensation for late trading and market timing transactions than it did for other mutual fund trades that it cleared; (iv) the prior knowledge exclusion did not bar coverage because, construing the ambiguous clause in favor of the insured, the term "officer" did not refer to all employees whose job title included the term "officer," but was limited to employees with important executive and managerial duties; and (v) the $140 million settlement, after defendants denied coverage, was reasonable in view of Bear Stearns's exposure and the probability that the SEC would prove its claims. In August 2017, the court amended the order (2017 NY Slip Op 31690[U]), to award plaintiffs prejudgment interest against all defendants because they wrongfully disclaimed and the first loss triggered each of the policies simultaneously on the day it occurred. The court found that the exhaustion provisions did not apply because Bear Stearns suffered a single large loss which exceeded the limits of each insurer on the very date that it was incurred. In August 2017, judgment was entered in plaintiffs' favor.
We first consider whether or not the insurers should have been granted summary judgment dismissing the complaint because SEC disgorgement is an uninsurable penalty and not a "Loss" covered by the policy.
The primary professional liability policy, to which the excess policies follow form, provides that the Insurers are to "pay on behalf of [Bear Stearns] all Loss which [Bear Stearns] shall become legally obligated to pay as a result of any Claim
. . . for any Wrongful Act of [Bear Stearns]." "Loss" is defined as:
"(1) compensatory damages, multiplied damages, punitive damages where insurable by law, judgments, settlements, costs, charges and expenses or other sums [Bear Stearns] shall legally become obligated to pay as damages resulting from any Claim or Claim(s);
"(2) costs, charges and expenses or other damages incurred in connection with any investigation by any governmental body or self-regulatory organization (SRO), provided however, Loss shall not include:
"(i) fines or penalties imposed by law; or . . .
"(v) matters which are uninsurable under the law pursuant to which this policy shall be construed."
Vigilant argues that there is no coverage because the United States Supreme Court in Kokesh v Securities and Exchange Commission (_ US_, 137 S Ct 1635 [2017]) conclusively defined the nature of the SEC disgorgement remedy as a penalty, not a loss, and that the Court of Appeals did not resolve this issue when it reversed to deny the insurers' motions to dismiss.
In Kokesh, decided after the Court of Appeals' prior decision reinstating the complaint, the United States Supreme Court held that SEC disgorgement constitutes a penalty, and is therefore subject to the five year statute of limitations of 28 USC § 2462. In so ruling, the Supreme Court reasoned that SEC disgorgement (i) is imposed as a consequence for a wrong committed against the public, rather than a wrong against particular individuals; (ii) is meant to punish the violator and deter others from similar violations; and (iii) in many cases, does not compensate the victims of securities violations; rather, the wrongdoer pays disgorged profits to the district court, which has discretion to determine how and to whom to distribute the money (id. at 1643-1644).
The Supreme Court's rationale as to the nature of disgorgement in Kokesh applies with [*5]equal force to the issue of whether the disgorgement paid by Bear Stearns, even if representing third-party gains, was a "Loss" within the meaning of the policy and whether public policy bars insurance companies from indemnifying insureds paying SEC disgorgement. In both instances disgorgement is a punitive sanction intended to deter. To allow a wrongdoer to pass on its loss emanating from the disgorgement payment to the insurer, thereby shielding the wrongdoer from the consequences of its deliberate malfeasance, undermines this goal and "and violate[s] the fundamental principle that no one should be permitted to take advantage of his own wrong" (Biondi v Beekman Hill House Apt. Corp., 94 NY2d 659, 664 [2000] [internal quotation marks omitted]). Thus, as SEC disgorgement is a penalty, it does not fall within the definition of "Loss" and there is no coverage.
Plaintiffs argue that even if the Supreme Court's reasoning behind the holding that disgorgement is a penalty extends beyond the limited context of Kokesh, it has no application here because the Court of Appeals has rejected the argument that the instant claim is not a Loss under the policies and has suggested that a disgorgement payment of a third-party gain is recoverable under an insurance policy. However, application of the doctrine of the "law of the case" is not warranted under the particular circumstances before us.
The law of the case is applicable to "legal determinations that were necessarily resolved on the merits in a prior decision" (Brownrigg v New York City Hous. Auth., 29 AD3d 721, 722 [2d Dept 2006]). On the prior appeal, the Court of Appeals stated that "the Insurers do not earnestly dispute that the claims fall within the policy's definition of Loss" (21 NY3d at 333), but did not rely on the policy language in denying defendants' motions. Instead it focused on the public policy issue. Furthermore, the doctrine does not apply where a motion for summary judgment follows a motion to dismiss that was not converted to a motion for summary judgment pursuant to CPLR 3212(c)(see Alvarado v City of New York, 150 AD3d 500, 500 [1st Dept 2017]; Rosen v Mosby, 148 AD3d 1228, 1233 [3d Dept 2017], lv dismissed 30 NY3d 1037 [2017]; 191 Chrystie LLC v Ledoux, 82 AD3d 681, 682 [1st Dept 2011]).
Even if the Court of Appeals' prior determination is viewed as addressing the contractual issue, "while the law of the case doctrine is intended to foster orderly convenience' . . ., it is not an absolute mandate which limits an appellate court's power to reconsider issues where there are extraordinary circumstances, such as subsequent evidence affecting the prior determination or a change of law'" (Frankson v Brown & Williamson Tobacco Corp., 67 AD3d 213, 218 [2d Dept 2009]; see also Foley v Roche, 86 AD2d 887, 887 [1982], lv denied 56 NY2d 507 [1982] [holding that where the basis for a prior order had since been overruled by the Supreme Court of the United States and by the Court of Appeals, the law of the case doctrine can be ignored even though the prior order was from a higher court]). Here, the United States Supreme Court's decision in Kokesh, characterizing SEC disgorgement as a penalty, represents such a change of law.
In reinstating the complaint, the Court of Appeals stated that "at this CPLR 3211 stage, the documentary evidence does not decisively repudiate Bear Stearns' allegation that the SEC disgorgement payment amount was calculated in large measure on the profits of others" (21 NY3d at 336). By this ruling, the Court suggested that, while public policy bars insurance coverage for the disgorgement of illicit gains, it does not preclude recovery of a disgorgement payment to the extent the payment was based on the gains of third parties. In adopting this view, the Court stated:
"Moreover, the cases upon which the Insurers rely are distinguishable (see e.g. Millennium Partners, L.P. v Select Ins. Co., 68 AD3d 420 [1st Dept 2009], appeal dismissed 14 NY3d 856 [2010]; Credit Suisse, 10 AD3d at 528). In each, the insured was barred from obtaining coverage for SEC-ordered disgorgement [*6]because the SEC's findings conclusively link[ed]' the disgorgement payment to improperly acquired funds in the hands of the insured (Millennium Partners, 68 AD3d at 420 [internal quotation marks omitted]; see also Credit Suisse, 10 AD3d at 529). In other words, they directly implicated the policy rationale for precluding indemnity for disgorgement—to prevent the unjust enrichment of the insured by allowing it to, in effect, retain the ill-gotten gains by transferring the loss to its carrier. In this case, in contrast, Bear Stearns alleges that it is not pursuing recoupment for the turnover of its own improperly acquired profits and, therefore, it would not be unjustly enriched by securing indemnity. The Insurers have not identified a single precedent, from New York or otherwise, in which coverage was prohibited where, as Bear Stearns claims, the disgorgement payment was (at least in large part) linked to gains that went to others. Consequently, at this early juncture, we conclude that the Insurers are not entitled to dismissal of Bear Stearns' insurance claims related to the SEC disgorgement payment" (21 NY3d at 337).
However, Kokesh has now provided the missing precedent, establishing that disgorgement is a penalty, whether it is linked to the wrongdoer's gains or gains that went to others. In Kokesh, the Supreme Court, emphasizing that when a sanction "can only be explained as . . . serving either retributive or deterrent purposes," it is a "punishment," rejected the SEC's argument that disgorgement is remedial because it simply puts the defendant back in the position "he would have occupied had he not broken the law." The Court explained:
"The Government's primary response to all of this is that SEC disgorgement is not punitive but remedial' in that it lessen[s] the effects of a violation' by
 "restor[ing] the status quo."' . . . As an initial matter, it is not clear that disgorgement, as courts have applied it in the SEC enforcement context, simply returns the defendant to the place he would have occupied had he not broken the law. SEC disgorgement sometimes exceeds the profits gained as a result of the violation. Thus, for example, an insider trader may be ordered to disgorge not only the unlawful gains that accrue to the wrongdoer directly, but also the benefit that accrues to third parties whose gains can be attributed to the wrongdoer's conduct.' SEC v. Contorinis, 743 F.3d 296, 302 (C.A.2 2014). Individuals who illegally provide confidential trading information have been forced to disgorge profits gained by individuals who received and traded based on that information—even though they never received any profits. Ibid.; see also SEC v. Warde, 151 F.3d 42, 49 (C.A.2 1998) ( A tippee's gains are attributable to the tipper, regardless whether benefit accrues to the tipper'); SEC v. Clark, 915 F.2d 439, 454 (C.A.9 1990) ( [I]t is well settled that a tipper can be required to disgorge his tippees' profits'). And, as demonstrated by this case, SEC disgorgement sometimes is ordered without consideration of a defendant's expenses that reduced the amount of illegal profit. App. to Pet. for Cert. 43a; see Restatement (Third) § 51, Comment h, at 216 ("As a general rule, the defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement. Denial of an otherwise appropriate deduction, by making the defendant liable in excess of net gains, results in a punitive sanction that the law of restitution normally attempts to avoid'). In such cases, disgorgement does not simply restore the status quo; it leaves the defendant worse off. The justification for this practice given by the court below demonstrates that disgorgement in this context is a punitive, rather than a remedial, sanction: [*7]Disgorgement, that court explained, is intended not only to prevent the wrongdoer's unjust enrichment" but also "to deter others' violations of the securities laws.' App. to Pet. for Cert. 43a." (137 S Ct at 1644-1645 [emphasis added]).
The United States Supreme Court has thereby made clear that SEC disgorgement is a penalty because it punishes a public wrong, and its purpose is deterrence, whether you are remitting your own ill gotten gains or those you generated for your customers through violations of the securities law, even if you did not directly share in those profits.
Kokesh has significance beyond the narrow issue of the statute of limitations because the Supreme Court analyzed the fundamental nature and purpose of the SEC's disgorgement remedy, which does not change into some different nature for purposes of insurance coverage. Thus, as defendants argue, Kokesh and the longstanding legal principles on which it relied fatally undermine the motion court's holding that the $140 million of the SEC disgorgement remedy that plaintiff seeks to recover is a covered loss under the policies. Indeed, if the $140 million portion of the disgorgement payment Bear Stearns seeks to recover reflects the gains of Bear Stearns's customers rather than of Bear Stearns itself, it makes it more, not less, of a penalty.
The fact that the disgorgement payment was later placed in a Fair Fund for distribution and could be used to offset Bear Stearns's civil liability does not require a different result. The use of disgorged funds to benefit investors is entirely consistent with the SEC's statutory authority, and "does not change the nature of the remedy" (SEC v First Pacific Bancorp., 142 F3d 1186, 1192 [9th Cir 1998], cert denied 525 US 1121 [1999]). As the Supreme Court stated in Kokesh, simply because "sanctions frequently serve more than one purpose" does not change the fact that disgorgement orders "are intended to punish" and "represent a penalty" (137 S Ct at 1645; see also Fishbach Corp., 133 F3d 170, 175 [2d Cir 1997] ["Although disgorged funds may often go to compensate securities fraud victims for their losses, such compensation is distinctly a secondary goal"]).
Accordingly, the judgment of the Supreme Court, New York County (Charles Ramos, J.), entered August 14, 2017, awarding plaintiffs sums of money, including prejudgment of the interest, as against defendant insurers Vigilant Insurance Company, The Travelers Indemnity Company, Federal Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and Liberty Mutual Insurance Company, should be reversed, on the law, without costs, plaintiffs' motion for summary judgment denied, defendants' motions for summary judgment declaring that plaintiffs are not entitled to coverage for the SEC disgorgement payment granted, and it is so declared. The appeals from the order of the same court and Justice, entered April 17, 2017, as amended by the order of the same court and justice entered on or about August 11, 2017, should be dismissed, without costs, as subsumed in the appeals from the judgment.
All concur.
Judgment, Supreme Court, New York County (Charles Ramos, J.), entered August 14, 2017, reversed, on the law, without costs, plaintiffs' motion for summary judgment denied, defendants' motions for summary judgment declaring that plaintiffs are not entitled to coverage for the SEC disgorgement payment granted, and it is so declared. Appeals from order, same court and Justice, entered April 17, 2017, as amended by order, same court and Justice, entered on or about August 11, 2017, dismissed, without costs, as subsumed in the appeals from the judgment.
Opinion by Andrias, J. All concur.
Sweeny, J.P., Richter, Andrias, Kahn, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 20, 2018
CLERK



Footnotes

Footnote 1:The total disgorgement payment was $160 million. Plaintiffs do not seek coverage for the $20 million portion representing their own ill gotten gains.

Footnote 2:In subsequent appeals, this Court held that (1) Bear Stearns's settlements were not adjudications of wrongdoing within the meaning of the dishonest acts exclusion, and that the court should not have dismissed the affirmative defense invoking the public policy against permitting insurance coverage for disgorgement, to the extent it is based on the settlements with the SEC and the NYSE (126 AD3d 76 [1st Dept 2015]); and (2) the insurers' unreasonable delay excused insured's settlement without their consent, and the insurers' repudiation of liability excused insured's alleged breach of its obligation to cooperate (151 AD3d 632 [1st Dept 2017]).