[692 NYS2d 304]

NICHOLAS A. BIONDI, Respondent, v BEEKMAN HILL HOUSE APARTMENT CORPORATION, Appellant.

First Department, May 27, 1999

APPEARANCES OF COUNSEL

*Victor M. Metsch* of counsel, New York City (*Edward L. Schiff* and *Thomas V. Juneau, Jr.,* on the brief; *Hartman & Craven, L. L. P.,* attorneys), for respondent.

*Daniel F. Markham, P. C.,* New York City, for appellant.

### OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the issue of whether a director of a corporation is entitled to indemnification under the corporation's by-laws of the sum the director owes as punitive damages under a settlement agreement in an underlying lawsuit, in which, after trial, the director was held liable. The sum due under the settlement agreement represented, as a compromise, only a portion of the punitive damage awards rendered against the director and not any part of the other damage awards, compensatory and for counsel fees, against him. Also at issue is whether, in any event, the jury's findings that the director acted in bad faith and in violation of the civil rights of the successful parties in the underlying action bar him from indemnification pursuant to Business Corporation Law § 721.

In late May 1995, Gregory and Shannon Broome, both attorneys and financially qualified, agreed with Simone Demou, a shareholder and proprietary lessee of defendant, Beekman Hill House Apartment Corporation, to sublet her apartment. Ms. Demou advised plaintiff, Nicholas A. Biondi, then the president and a director of Beekman, of her agreement with the Broomes and their financial qualifications. Plaintiff informed Demou that he would meet with Mr. Broome and that a full Board meeting to pass on their sublet application would not be required because the Board would follow his recommendation.

After a June 5, 1995 meeting between plaintiff and Mr. Broome, an African-American, Beekman's managing agent informed Broome that he and his wife would have to meet with the full Board. Prior to that meeting, plaintiff told another director that Broome was a black man; he told another that he

felt "uneasy" after meeting Broome and was told by that particular director that "if you feel uneasy because Mr. Broome is black, we will be sued."

At the underlying trial, a Federal discrimination action entitled *Broome v Biondi*, brought in the Southern District of New York, Ms. Demou testified that she became concerned about the requirement of a second meeting because the Broomes were qualified and a full Board meeting was unprecedented. She believed that this departure from precedent was racially motivated. She described past incidents in which she believed plaintiff had acted in a similarly prejudiced manner and she suspected that race was a factor in considering the Broomes' application because plaintiff was in charge of the approval process. After the Broomes were interviewed by the full Board on June 13, 1995, their sublet application was denied unanimously. In addition, the Board caused a notice of default, later rescinded despite plaintiff's objection, to be issued against Demou for "objectionable conduct" under a provision of her proprietary lease. The objectionable conduct consisted of Demou's exploitation of an accusation of racism against plaintiff and the other Board members to compel Board acceptance of the Broomes' application.

On January 30, 1996, plaintiff, using Beekman's corporate counsel as his personal attorney, commenced a defamation action against Demou in Supreme Court, New York County. The Broomes commenced their Federal action against Beekman and its directors, including plaintiff, on February 2, 1996, charging, in part, violations of the Federal Fair Housing Act, the New York State Human Rights Law and 42 USC §§ 1981 and 1982. Plaintiff and the other Beekman defendants, alleging injurious falsehood, brought a third-party action against Demou, who removed plaintiff's defamation action to the Federal court hearing the *Broome* matter and counterclaimed against all the Beekman defendants, alleging that their rejection of the Broomes' application, issuance of a notice of default and filing of two lawsuits constituted unlawful retaliation against her for supporting the Broomes' application. Demou also counterclaimed for breach of fiduciary duty, breach of contract and tortious interference with the performance of a contract.

After a seven-day trial, the *Broome* jury returned a verdict against Beekman and its five directors. With respect to the Broomes' claims against plaintiff, the jury found that he violated the Federal Fair Housing Act, 42 USC §§ 1981 and

1982 and the New York State Human Rights Law and held him personally liable, jointly and severally, for $230,000 in compensatory damages and severally liable for $125,000 in punitive damages. Only one other director was held personally liable and the punitive damage award against him was less than one half of the punitive damage award against plaintiff.

With respect to Demou's claims, the jury found that plaintiff violated the Federal Fair Housing Act and the New York State Human Rights Law by retaliating against her, breached his fiduciary duty to her and tortiously interfered with her sublease agreement with the Broomes. For plaintiff's actions against Demou, the jury assessed $27,000 in punitive damages against him and awarded her $107,000, later reduced by the court to $25,310, in compensatory damages against plaintiff, jointly and severally. The punitive award against plaintiff was more than four times higher than what was assessed against the other directors collectively. After the jury's verdict, the Broomes and Demou moved successfully for an order awarding them attorneys' fees pursuant to 42 USC § 1988 and 42 USC § 3613. The court awarded the Broomes and Demou $479,050.03 and $407,062.77, respectively, for their attorneys' fees and expenses.

During a settlement conference under the auspices of the United States Court of Appeals for the Second Circuit, to which the matter had been appealed, the parties to the *Broome* action agreed to an oral settlement limiting the liability of plaintiff and the other directors to the respective punitive damage award rendered against each director. Plaintiff, however, failed to comply with his part of the agreement, necessitating a second settlement conference at which his contribution was reduced from $154,000, the full amount of the punitive damage awards against him plus interest, to $124,000, plus interest. This agreement, reduced to writing and signed by plaintiff, provided that "[a]ll parties shall provide complete releases * * * as to all other parties * * * except (1) that [plaintiff] and Beekman shall retain their claims against each other."

Plaintiff failed to make full payment pursuant to the second settlement agreement and reinstated his appeal of the *Broome* action; the Broomes moved to stay the appeal pending resolution of their State court action against plaintiff to enforce the settlement agreement. Ultimately plaintiff's appeal in the *Broome* action was dismissed as moot.

In an attempt to obtain indemnification of the damages apportioned against him personally, plaintiff then brought the

within action against Beekman, relying primarily upon article VII of its by-laws.* Beekman moved pursuant to CPLR 3211 to dismiss the complaint, in part, for failure to state a cause of action. The IAS Court denied the motion, observing, in part, that the parties' settlement agreement in the Federal court action "unequivocally states that [plaintiff] and Beekman 'shall retain their claims against each other.'" In addition, the court held, the agreement "does not mention which damages [plaintiff] is required to pay. The amount that [plaintiff] is required to pay under the [a]greement can be anything from the compensatory damages to the attorneys fees. As such, because [plaintiff] raises an uncertain and disputed jural relation as to present or propose[d] obligations, he states a cause of action." The court's premises for denial of the motion are, respectively, in the first instance, irrelevant and, in the second, factually incorrect. We reverse.

In denying the motion, the IAS Court, citing *Guggenheimer v Ginzburg* (43 NY2d 268, 275), stated that a "motion to dismiss will fail if 'from [the complaint's] four corners factual allegations are discerned which taken together manifest any cause [cognizable] at law'." The court, however, ignored the fact that it had considered extrinsic evidence in the form of affirmations and exhibits, plaintiff's affidavit and exhibits attached thereto, the settlement agreement, a postsubmission letter to the court from plaintiff's counsel, Beekman's complaint against its for-

---

* Article VII provides that "[t]o the extent allowed by law, the Corporation shall indemnify any person made a party to an action by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he, his testator or intestate, is or was a director or officer of the Corporation against the reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense of such action, or in connection with an appeal therein, except in relation to matters as to which such director or officer is adjudged to have breached his duty to the Corporation, as such duty is defined in Section 717 of the Business Corporation Law. To the extent allowed by law, the Corporation shall also indemnify any person, made, or threatened to be made, a party to an action or proceeding other than one by or in the right of the Corporation to procure a judgment in its favor, whether civil or criminal, including an action by or in the right of any other corporation, domestic or foreign, which he served in any capacity at the request of the Corporation by reason of the fact that he, his testator or intestate was a director or officer of the Corporation or served it in any capacity against judgments, fines, amounts paid in settlement, and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding, or any appeal therein, if such director or officer acted in good faith, for a purpose which he reasonably believed to be in the best interests of the Corporation and, in criminal actions or proceedings, in addition, had no reasonable cause to believe that his conduct was unlawful".

mer counsel in the Federal action as well as a postsubmission letter from Beekman's counsel. Where extrinsic evidence is used, the standard of review under a CPLR 3211 motion is "whether the proponent of the pleading has a cause of action, not whether he has stated one." (*Guggenheimer v Ginzburg, supra,* at 275.)

In cases where the court has considered extrinsic evidence on a CPLR 3211 motion, "the allegations are not deemed true * * *. The motion should be granted where the essential facts have been negated beyond substantial question by the affidavits and evidentiary matter submitted." (*Blackgold Realty Corp. v Milne,* 119 AD2d 512, 513, *affd* 69 NY2d 719.) "[A]llegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence," are not presumed to be true and accorded every favorable inference. (*Kliebert v McKoan,* 228 AD2d 232, *lv denied* 89 NY2d 802.)

Based on a review of the evidence submitted, it is clear that plaintiff does not have a cause of action because, in accordance with the settlement agreement and based on his inability in his various submissions to the court to dispute that fact, he is accountable only for the punitive damage award against him, or more precisely, a portion thereof, the indemnification of which is prohibited by public policy. (*Hartford Acc. & Indem. Co. v Village of Hempstead,* 48 NY2d 218.) The rationale behind the prohibition is manifest: indemnification would "defeat[ ] the purpose of punitive damages, which is to punish and to deter others from acting similarly." (*Supra,* at 226.) This prohibition applies whether the underlying misconduct was "intentional * * * 'gross[ly] neglige[nt], reckless[ ] * * * wanton[ ]', * * * [a] 'conscious disregard of the rights of others or * * * conduct so reckless as to amount to such disregard.' " (*Home Ins. Co. v American Home Prods. Corp.,* 75 NY2d 196, 200.) Since Beekman's insurer provided plaintiff with both trial and appellate counsel, as plaintiff admits both in his opposing affidavit and verified complaint, there are no attorneys' fees or compensatory damages to indemnify. His allegation regarding his attorneys' fees is therefore unsupported, conclusory and contradicted by the pleading and Beekman's extrinsic evidence.

Thus, except for the claim for indemnification of a portion of the punitive damage award against him, which is legally barred, the complaint is factually deficient. Insofar as the IAS Court's incorrect factual finding that the settlement agreement "does not mention which damages [plaintiff] is required to pay",

plaintiff does not deny that he need not pay the other awards or that he is only obligated to pay a portion of the punitive damage award against him. The settlement agreement itself corroborates this fact. The amount next to each individual director's name, except plaintiff's, is identical to the amount of the punitive damage award against him or her. The only reason the amount next to plaintiff's name does not exactly correspond to the punitive damage award against him is that, after repudiating his earlier oral agreement to pay the full amount of the award, he was able to extract a further $30,000 reduction from the Broomes and Demou.

Business Corporation Law § 721, which, insofar as is relevant, provides that "no indemnification may be made to * * * any director * * * if a judgment * * * adverse to the director * * * establishes that his acts were committed in bad faith", also prohibits Beekman from indemnifying plaintiff. In the *Broome* Federal action the court instructed the jury that if it found that "the Board made determinations in bad faith and with a purpose that was not in the best interest of all the people they represent, then you must find that the Board breached its fiduciary duty" to Ms. Demou. The jury expressly found that plaintiff breached his fiduciary duty to Demou, and a judgment incorporating that finding was entered. The jury also found, and the judgment establishes, that plaintiff violated the civil rights of the Broomes and Demou. These acts could only have been committed in bad faith. Furthermore, in denying the Beekman defendants' posttrial motion for judgment as a matter of law on Demou's counterclaim for breach of fiduciary duty, the Federal court concluded that "the jury could reasonably find that the Beekman Board members acted in bad faith and with a purpose that was not in the best interest of the cooperative."

Relying on Business Corporation Law § 722 (b), which provides, in pertinent part, that the termination of a civil action by judgment or settlement shall not in itself create a presumption that the director did not act, in good faith, for a purpose which he reasonably believed to be in the best interests of the corporation, the IAS Court ruled that the "mere fact" that the *Broome* jury found that plaintiff violated the civil rights of the Broomes and Demou "is not dispositive" of his indemnification claim. Plaintiff's bad faith against Beekman, the corporate entity he served, is not at issue in this indemnification claim. Thus, even if plaintiff acted in good faith vis-à-vis the corporation, indemnification is prohibited in view of the

fact that the Federal court judgment established that he acted in bad faith toward Demou and the Broomes (*see*, Business Corporation Law § 721).

Indemnification arises "where two or more persons are subject to a duty to a third person either as joint promisors or otherwise, under such circumstances that one or more of them, as between themselves, should perform it rather than the other." (Restatement of Restitution § 76, comment *b*; *see*, *City of New York v Lead Indus. Assn.*, 222 AD2d 119, 125.) The key to indemnification, therefore, is duty to a third person. Thus, it is clear that the Legislature did not restrict Business Corporation Law § 721's prohibition against indemnifying directors for their bad-faith acts to instances where the corporation was the target of bad faith.

On this point, it may be that the IAS Court accepted the possibility that plaintiff may have acted in good faith for a purpose that he reasonably believed to be in Beekman's best interest while willfully violating the civil rights of the Broomes and Demou and acting in bad faith towards them. Such a conclusion would, however, stand reason on its head. A director cannot willfully violate the Civil Rights Law and act in bad faith, thus exposing the corporation to potential liability, and, at the same time, reasonably believe that in so doing he is acting in good faith and in the corporation's best interests.

We have considered plaintiff's other arguments and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Charles Ramos, J.), entered July 27, 1998, denying defendant's motion pursuant to CPLR 3211 to dismiss the complaint, should be reversed, on the law, with costs and disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

ELLERIN, P. J., WILLIAMS and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered July 27, 1998, reversed, on the law, with costs and disbursements, and defendant's motion to dismiss the complaint granted.