Memorial Sloan Kettering Cancer Ctr. v Bristol Myers Squibb Co. (2024 NY Slip Op 50074(U))

[*1]

Memorial Sloan Kettering Cancer Ctr. v Bristol Myers Squibb Co.

2024 NY Slip Op 50074(U)

Decided on January 24, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 24, 2024
Supreme Court, New York County

Memorial Sloan Kettering Cancer Center, Eureka Therapeutics, Inc., Plaintiff,

against
Bristol Myers Squibb Company, CELGENE CORPORATION, 
 JUNO THERAPEUTICS, INC., Defendant.

Index No. 651548/2022

Attorneys for Plaintiff:
SUSMAN GODFREY LLP 
JACOB W. BUCHDAHL, ESQ. 
AMY GREGORY, ESQ
Attorneys for the Defendants:
QUINN EMANUEL URQUHART & SULLIVAN, LLP
MAAREN A. SHAH, ESQ.
MICHAEL B. CARLINSKY, ESQ.
ANDREW S. CHALSON, ESQ.
JIANJIAN YE, ESQ.

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 30, 31, 32, 33, 34, 35, 36, 38 were read on this motion for DISMISSAL.
This dispute arises from a licensing agreement entered into between plaintiffs Memorial Sloan Kettering Cancer Center and Eureka Therapeutics, Inc. (collectively, MSK), on the one hand, and defendant Juno Therapeutics Inc. (Juno), on the other. In motion sequence 002, defendants Bristol Myers Squibb Company (BMS), Celgene Corporation (Celgene), and Juno move, pursuant to CPLR 3211 (a)(1) and (a)(7), to dismiss the complaint in its entirety.
For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

Background
The following facts are taken from the first amended complaint and are accepted as true for purposes of this motion. Pursuant to a collaborative research agreement, plaintiffs Memorial Sloan Kettering Cancer Center, a cancer research institution, and Eureka Therapeutics Inc., a clinical biopharmaceutical company, agreed to work together to develop patent technology for chimeric antigen receptor therapy (CAR), a type of blood cancer treatment (NYSCEF doc. no. 27, para. 30). MSK partnered with Juno, another biopharmaceutical company, to assist with the development of the technology into an effective treatment for patients (id. at paras. 39).
On August 2, 2016, MSK entered into an exclusive license agreement with Juno (id. at para 37). To incentivize Juno to use MSK's CAR technology, section 3.1 of the license agreement required that Juno "use commercially reasonable efforts (and in any event no less than the efforts and resources normally used by a similarly situated entity relating to similarly situated product), at its own expense, to: (a) Develop, Manufacture and Commercialize a CT CAR Product; and (b) thereafter continue marketing such CT CAR Product throughout the life of this Agreement" (NYSCEF doc. no. 27, para. 40).
Additionally, according to section 4.2.3 of the agreement, if a CAR product was commercialized by Juno, MSK would be entitled to royalties at 3% of worldwide net sales of the product if it were to enter a phase I trial before the fifth anniversary of the effective date of said agreement. The license agreement purportedly accounts for royalties to be paid to MSK, irrespective of whether the Juno product was a licensed product under the agreement (License Agreement, NYSCEF doc. no. 38, pg. 16; Complaint, NYSCEF doc. no. 27, para. 43).
The complaint alleges that MSK specifically bargained for this benefit of non-licensed royalties. Juno purportedly was a new company, and it was understood that it was likely Juno would pursue the development of competing products and be acquired by a larger company (NYSCEF doc. no. 27, para. 45). Therefore, it is alleged that the benefit of obtaining royalties on [*2]products not based on MSK's inventions was a benefit MSK specifically bargained for (id.).
After execution of the licensing agreement, Juno was acquired by defendant Celgene and later BMS (id. at 48, 52). It is asserted, upon information and belief, that Juno assigned its rights and obligations under the licensing agreement to BMS, and that BMS acquired and assumed Juno's rights and obligations under the licensing agreement (id. at 51, 56). It is alleged that Juno and Celgene were "subsumed into the regular business operations of Bristol Myers Squibb," resulting in BMS operating as a single business entity with respect to the licensing agreement (id.at 57).
Prior to Juno's acquisition, Bristol Myers Squibb held a license for a competing blood cancer treatment now known as the drug Abecma (id. at 72). MSK acknowledges that Abecma is not a licensed product or service under the licensing agreement in dispute in this matter, but asserts, nevertheless, that it qualifies as a "non-licensor CT CAR Product" that is subject to section 4.2.3 of the licensing agreement (id. at 77).
It is alleged that BMS made initial milestone payments in recognition of its obligations under the licensing agreement, but that it later failed to make continuing running royalty payments of 1.5% on all worldwide sales of Abecma as required by section 4.2.3 of the subject agreement (id. at 81, 99). Instead, BMS moved forward with bringing Abecma to the world market (id. at 91). In so doing, BMS purportedly abandoned its effort to pursue MSK's technology, failed to obtain FDA approval of MSK's technology, and failed to develop, manufacture, and commercialize any licensed products as required by section 3.1 of the license agreement (id. at 84, 89).
MSK commenced the instant suit and seeks recovery for BMS's alleged failure to comply with its obligations under the licensing agreement. The complaint asserts one cause of action for breach of contract, and one cause of action for declaratory judgment, for an order declaring that MSK is entitled to Abecma royalties (id. at pgs.16-17).

 Discussion
It is well settled that on a motion to dismiss, the complaint is "to be afforded a liberal construction" (Leon v Martinez, 84 NY2d 83, 87 [1994]). On a motion to dismiss pursuant to CPLR 3211 (a) (7), the court " accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [2018], quoting Leon, 84 NY2d at 87-88). However, " bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence,' are not presumed to be true and accorded every favorable legal inference" (Biondi v Beekman Hill House Apt. Corp., 257 AD2d 76, 81 [1st Dept 1999], affd 94 NY2d 659 [2000] [internal quotation marks and citation omitted]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). 
The complaint asserts a single cause of action for breach of contract, for two separate reasons. First, MSK alleges that defendants breached the licensing agreement by their failure to pay royalties on the non-licensed product Abecma. BMS seeks dismissal of this claim arguing, primarily, that royalties are not required for Abecma under the plain language of the licensing agreement (NYSCEF doc. no.34, pg.15). Next, BMS argues that dismissal is warranted because the royalty term of the licensing agreement has not yet begun, and the language of the licensing agreement permits BMS to develop products at any time. According to BMS, Abecma does not [*3]qualify as a non-licensed product under the license agreement, leaving room for the future development of a qualifying product, within the (not yet commenced) royalty term (id. at 21). Finally, BMS asserts that this action, as filed against Celgene and Bristol Myers Squibb is improper as those entities are neither parties to the agreement nor rightly liable for Juno's contractual obligations (id. at 27).
Defendants are correct that the first cause of action for breach of contract must be dismissed as against defendants Celgene and Bristol Myers Squibb. "In New York, a parent corporation generally cannot be held liable for the debts of its wholly owned subsidiary, nor can it be bound by the contract of that subsidiary" (World Wide Packaging, LLC v Cargo Cosms., LLC, 193 AD3d 442 [1st Dept 2021]). Parent and subsidiary entities are generally considered and treated as separate legal entities, so that the contract of one does not bind the other (Capricorn Invs. III, L.P. v Coolbrands Int'l, Inc., 24 Misc 3d 1224 (A) [Sup Ct Ny Cty 2009]); Sheridan Broadcasting Corp. v Small, 19 AD3d 331 [1st Dept 2005][ "evidence of domination alone does not suffice"]).
However, a parent company can be held liable as a party to its subsidiary's contract: (1) if the parent manifests an intent to be bound by the contract; or (2) if the elements of piercing the corporate veil are present (Horsehead Indus., Inc. v Metallgesellschaft AG, 239 AD2d 171, 172 [1st Dept 1997]). Intent is inferable if the parent participated in the negotiation of the contract, if the subsidiary is a dummy for the parent, or if the subsidiary is controlled by the parent for the parent's own purposes (id.; Warnaco Inc. v VF Corp., 844 F Supp 940, 946 [SDNY 1994][parent company may be liable on a contract signed by its subsidiary if the subsidiary is shown to be a mere shell dominated and controlled by the parent for the parent's own purposes]).
Here, it is alleged that Celgene and Juno were "subsumed into the regular business operations of BMS" and that Celgene and BMS took "exclusive control of performing under the license agreement." It is further alleged that BMS assumed Juno's contractual obligations by sending updates to MSK, by making initial milestone royalty payments, and by operating clinical trials and communicating with regulatory agencies about a "related" product development. The complaint also alleges that BMS made "representations" to investors and the SEC that MSK's technology was licensed to BMS and Celgene (NYSCEF doc. no. 27, 60-69, 80-83).
It is this court's view, however, that there are insufficient facts pled that would support the claim that BMS or Celgene assumed Juno's contractual obligations under the license agreement, or otherwise operated Juno in a manner sufficient to pierce the corporate veil. The complaint relies, most heavily, upon BMS's conduct that was interpreted by MSK as having domination over Juno's operation. Conclusory allegations of business overlap, however, are insufficient to impose contractual liability on a parent corporation (Sheridan Broadcasting Corp. 19 AD3d 331). To impose parental liability, facts must be alleged that establish an intent to be bound, which may be shown by contract negotiation, use of the subsidiary as a shell and use of the subsidiary solely for the parent's operational purposes (Horsehead Indus., Inc. 239 AD2d at 172). Here, there are no facts pled to support the contention that BMS participated in the relevant contract negotiations, or that Juno was otherwise operated by BMS or Celgene as a dummy corporation. Although it appears that the entities worked jointly to bring products to market, it is not sufficiently alleged that Juno essentially ceased to operate and functioned solely for BMS's own interests (Warnaco Inc. v 844 F Supp at 946).
It appears that MSK was aware that Juno would work on competing products, and would likely partner with larger entities, as the plain language of the agreement permits "affiliates" to [*4]support Juno in its development of relevant products (NYSCEF doc. no. 34, pg. 27). Yet, that expectation does not serve as a basis, in essence, to transform an "affiliate" into a licensee under the agreement, absent allegations of conduct evidencing intent or warranting the piercing of the corporate structure (World Wide Packaging, LLC 193 AD3d 442; Horsehead Indus., Inc. 239 AD2d at 172). Although the complaint states that Celgene and BMS "assumed" Juno's contractual obligations, that allegation, without more, is insufficient. Evidence of domination alone does not suffice (Sheridan Broadcasting Corp. v Small, 19 AD3d 331 [1st Dept 2005]). Therefore, plaintiff's complaint, as asserted against BMS and Celgene, is dismissed.
With regard to defendant Juno, the court notes that the complaint fails to identify any specific link between the actions of Juno and the development of Abecma. The complaint generally refers to "defendants" and claims that "defendants developed and are now selling a competitor therapy product called Abecma," and that "defendants" manufacture and sell Abecma (NYSCEF doc. no. 32, paras 12, 14). The publication cited by plaintiffs in their complaint refers only to Juno as a "wholly owned subsidiary" of BMS (NYSCEF doc. no. 32, para. 58). Nothing either refers or relates to Juno as a creator or commercial owner of the product. These failures notwithstanding, the allegations of the complaint are sufficient to state a claim as against Juno, and shall stand, as the complaint fairly and completely states a claim for breach of contract for Abecma as a non-licensed product. The extent to which Abecma can be determined to be a qualifying product under the agreement, whether Juno breached the agreement by failing to commercialize an MSK product, and whether Juno owes royalty payments to MSK for the development and resultant sale of Abecma, a non-licensed product, will be the subject of inquiry and exploration during discovery.
The second ground for plaintiffs' breach of contract claim is the allegation that Juno failed to use reasonable efforts to develop, manufacture and commercialize an MSK product. The court finds that the complaint pleads sufficient facts to sustain that cause of action. The complaint identifies an agreement; alleges that Juno failed use reasonable efforts to develop and commercialize a licensed product; asserts plaintiffs performed on the agreement, and claims damages were sustained as a result of Juno's failure to develop and commercialize MSK's technology in a timely manner. Plaintiffs have met their burden as to this ground for contractual relief, sufficiently, to survive dismissal (34-06 73, LLC v. Seneca Ins. Co., 39 NY3d 44, 52 [2022]).

 Conclusion
Accordingly, it is hereby
ORDERED that defendants' motion to dismiss the complaint is granted in part and denied in part; and it is further
ORDERED that the complaint, as asserted against defendants Celgene Corporation and Bristol Myers Squibb Company is dismissed, in its entirety, without prejudice; and it is further
ORDERED that the action is severed and continued against defendant Juno Therapeutics Inc.; and it is further
ORDERED that the caption be amended to reflect the dismissal of defendants Celgene Corporation and Bristol Myers Squibb Company and that all future papers filed with the court bear the amended caption; and it is further
ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein0; and it is further
ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website)].
01/24/2024