| |
|---|
| **Neel v New York Univ.** |
| 2026 NY Slip Op 30752(U) |
| February 26, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 655743/2023 |
| Judge: Dakota D. Ramseur |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   **HON. DAKOTA D. RAMSEUR**

*Justice*

PART  **34M**

-------------------------------------------------------------------X

BENJAMIN G. NEEL,

Plaintiff,

- v -

NEW YORK UNIVERSITY, NYU LANGONE HEALTH

Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 655743/2023 |
| MOTION DATE | 03/06/2024 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 51, 53, 56, 58, 75, 76, 77, 78, 79

were read on this motion to/for                    DISMISS                    .

In November 2023, plaintiff, Benjamin G. Neel (hereinafter "plaintiff") commenced this action for breach of contract, religious discrimination, retaliation, and intentional interference with prospective economic advantage, against his employers New York University ("NYU") and its subsidiary NYU Langone Health ("NYULH") (collectively "defendants"). Plaintiff's statutory causes of action are brought under New York State ("NYSHRL") and New York City Human Rights Laws ("NYCHRL") and the New York State Labor Law ("NYLL"). More specifically, plaintiff alleges that defendants unlawfully terminated him from his leadership positions after reposting various images related to the Israel-Hamas conflict after October 7, 2023. In motion sequence 003, defendants move pursuant to CPLR 3211 (a) (1) and (a) (7) to dismiss plaintiff's amended complaint. The motion is opposed. For the reasons stated below the motion is granted in part.

## BACKGROUND

Plaintiff, a Jewish male, is a medical doctor, clinician-scientist, author, and "prolific contributor to social media" who frequently utilized his twitter (now "X") account to comment on and criticize the

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL
Motion No. 003

Page 1 of 17

Israeli government and the geopolitical relations between Israel and Palestine. (NYSCEF doc. no. 25 at ¶¶1,17, 24, "amended complaint.") In 2014, he signed an employment agreement with the defendants to work as a faculty professor in the NYU School of Medicine and in a leadership position as the Director of the Laura and Isaac Perlmutter Cancer Center ("PCC"), an entity operated by defendants' subdivision NYULH. (NYSCEF doc. no. 38, Agreement). His PCC director position also included the designation as Dean of Cancer Research and provided for funding for a laboratory ("Neel Lab") to support his clinical research. (Id.) according to the specific provision entitled "Cancer Center Support Funds" Neel Lab's funding is ". . .contingent upon [plaintiff's] continuing appointment as Director of the Perlmutter Cancer Center. In addition, these funds may be used to support operations of your laboratory, up to a maximum amount of Five Hundred Thousand Dollars ($500,000) per year, once the initial Research Support Funds of Ten Million Dollars ($10,000,000) have been depleted." (NYSCEF doc. no. 38 at § 3, Agreement.) Section 1, subsection "c" of the Agreement entitled "Termination for Cause" provides that plaintiff may be terminated for "conduct which, in the good faith determination of NYU Langone Health has had or may be expected to have a detrimental effect upon the reputation, character or standing of NYU Langone Health." (Id. at §1[c]).

The Agreement functioned in concert with the university's existing Social Media Policy ("Policy") and Code of Conduct ("Code"). In relevant part, section "V" of the Policy entitled "Personal Social Media" prohibits employees from posting or sharing statements on social media that are "[o]ffensive, obscene, defamatory, threatening, intimidating, harassing, shaming, bullying, retaliatory, discriminatory, hateful, racist, sexist, or result in public humiliation" and holds each employee responsible for the content posted on their personal social media pages. It immediately goes on to state that "[s]tatements of these natures are a breach of the NYU Langone Code of Conduct." (sic) (NYSCEF doc. no. 46 at § V-G, Policy)

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL                    Page 2 of 17
Motion No. 003

2 of 17

[* 2]

Plaintiff's action arises from the termination of both his leadership positions after he reposted and commented on his Twitter account about the October 7, 2023 Israel-Hamas conflict ("the Conflict.") As will be discussed below, the parties dispute whether plaintiff's conduct, as pled in the amended complaint, breached the university's policies or qualifies as cause for his termination. The first repost contained three caricatures satirizing (1) the violence between the two groups, (2) the futility of mediation, and (3) acts of violence against Jewish women. The second and third reposts contained plaintiff's criticism of reporting on Palestinian mortality statistics and an image of the LGBTQ+ flag merged with the Palestinian flag. The amended complaint alleges that plaintiff's reposts were recreational outlets for him to discuss the Conflict as well as practice of his Jewish faith, which he claims is an ethnic and religious identity directly associated with supporting the State of Israel. (amended complaint at ¶¶24, 27-28.)

The amended complaint alleges that on October 31, 2023, defendants' human resources office verbally informed plaintiff in a meeting that it was suspending him and intended to terminate him as director of PCC based on "some patient complaints" it received in responses to his reposts and comments on social media about the Conflict. (Id. at ¶32.) The following day (November 1st), plaintiff received a letter from Rachel Ackman, ("Ackman") defendants' Director of Research Integrity & Compliance office. In it, Ackerman informs him the university intends to formally investigate allegations of research misconduct involving a 2019 Neel Lab clinical publication he co-authored that were pending review since June 2023. (Id. at ¶ 65.) Five days later on November 6th, plaintiff's counsel sent a letter to defendants' general counsel alleging religious discrimination against the university for suspending and terminating plaintiff's leadership positions. (amended complaint at ¶ 68.)

Four days after plaintiff's correspondence (November 10th) defendants formally terminated his leadership positions as Director of PCC and Dean of Cancer Research (NYSCEF doc no. 44, "Notice") as it initially communicated to him on October 31st. Plaintiff's faculty position, however, remained unchanged. (Id.) The Notice refers to plaintiff's "social media postings regarding the Isreal-Hamas war"

**655743/2023 NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL**
**Motion No. 003**

**Page 3 of 17**

[* 3]

as an intentional breach of both university policy—specifically its social media Policy ("Policy")—and code of conduct ("Code") and behavior that "has had or may have" a negative effect on the university's reputation, and thus, constitutes cause for termination pursuant to the Agreement. (*Id.*) Ten days later plaintiff commenced the instant action against the defendants. (amended complaint at ¶69.) At an unspecified time after plaintiff commenced this action, defendants reallocated $500,000 of cancer research funding away from Neel Lab.

Around the same time as plaintiff's reposts and comments, defendants also removed Dr. Zaki Masoud ("Masoud")—an NYULH doctor—because Masoud's social media posts about the Conflict also drew public criticism against the university. (amended complaint at ¶38.) However, in contrast to plaintiff, Masoud was reinstated to his "full-time position with all attendant privileges" after the university received public criticism and pressure to reinstate him. (*Id.* at ¶¶5-7,76.) According to the amended complaint, one day prior to defendants' verbal notice of suspension and termination, Dr. Steven Abramson ("Abramson"), NYULH's Executive Vice President and Vice Dean for Education, "strongly implied" to plaintiff that although his social media posts were not cause for termination, the posts "ma[de] it hard" for it to terminate Masoud. From his perspective, defendants' actions were not based on a veritable investigation into the complained-of social media posts, but merely its attempt to "feign impartiality," and in doing so, he alleges that it discriminated against him based on his religion and support for Israel. (*Id.* at ¶¶39–40.)

Plaintiff's cause of action for breach of contract (Count 1) is based on the allegations that his leadership position was terminated without cause. He highlights the statements made and implied by Abramson to assert that no cause existed to terminate his leadership position. (*Id.* at ¶39.) Further to this, his amended complaint attaches various documents that, in his view, demonstrates that his reposts and comments about the Conflict expressed widely shared sentiments amongst NYU employees and administrators and thus, no cause could possibly exist to justify his removal. (NYSCEF doc. nos. 26-30,

655743/2023  NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL          Page 4 of 17
Motion No. 003

4 of 17

"employee emails.") His NYSHRL and NYCHRL claims for religious discrimination (Counts 2 and 4) are based on what he alleges is the termination of his leadership roles based on his religion. (amended complaint at ¶¶88-92, 99-103.) His NYLL claim (Count 6) is based on the allegations that his termination is associated with his recreational use of social media. (*Id.* at ¶26.) His claim for intentional interference with and economic advantage (Count 7) arises from him losing a consulting contract with Lighthouse Therapeutics and other agreements allegedly being placed in jeopardy after the defendants publicly announced his suspension while entirely "oblivious" that his notoriety would result in commercial and scientific media outlets reporting on it, thereby causing reputational harm to him. (*Id.* at ¶¶43-45,115.)

Plaintiff's NYSHRL and NYCHRL retaliation claims (Counts 3 and 5) arise from two events that occurred after he alleged religious discrimination against the defendants on November 6th and commenced this action on November 20th. First, the amended complaint alleges that defendants reallocated funding away from Neel Lab. (*Id.* at ¶48.) Although the amended complaint acknowledges Neel Lab's funding was contractually tied to plaintiff's leadership roles, it nonetheless alleges that the timing between the reallocation and his November 6th letter and November 20th filing and the circumstances surrounding the manner in which defendants decided to invoke the contractual mechanism establishes a causal connection of retaliation. (*Id.* at ¶¶51-56.)

Second, the amended complaint alleges defendants commenced a "retaliatory research misconduct process" related to two anonymous complaints from April and May of 2023 posted on "PubPeer," a website that purportedly hosts post-publication scientific peer reviews. Both anonymous posts alleged that plaintiff co-authored a 2019 Neel Lab medical report containing falsified data. (*Id.* at ¶¶ 48, 57, 59.) According to the amended complaint, the university conducted an informal review and was pleased with plaintiff's responses to the allegations. It also alleges that during the informal review of the anonymous allegations the defendants became aware that Dr. Zheng, plaintiff's co-author, was responsible for the inaccurate data and that plaintiff engaged in no wrongdoing. (*Id.* at ¶¶60-67.) Thus, in

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL
Motion No. 003

Page 5 of 17

5 of 17

his view, defendants' November 1st decision to commence a formal inquiry against him is, in essence, retaliation for his November 6th letter and November 20th filing. Additionally, the amended complaint alleges that Ackerman attempted to accelerate the investigative process to deprive him of his statutory right to comment on the initial report, though same never occurred. (*Id*. at ¶¶70-74.)

Defendants' CPLR 3211 Motion

Defendants move to dismiss the amended complaint pursuant to CPLR 3211 (a) (1) and (a) (7). It makes two arguments in support of dismissing plaintiff's breach of contract claim. First, it argues under CPLR (a)(7) that the amended complaint's allegation concede that plaintiff failed to perform under the contract. (NYSCEF doc. no. 36, at 16, defendants' memo in support) Second, it argues under (a) (1) that pursuant to the Policy, Code, and Agreement, it terminated plaintiff's leadership positions for cause and thus, it did not breach the Agreement. (*Id*. at 17.)

Next, it argues under CPLR 3211 (a) (7), that plaintiff's labor law claim[1] (count 6) fails to state a cause of action because § 201-d (2) (c) does not protect his use of social media. It posits, *arguendo*, that even if plaintiff's conduct were protected by the statute, dismissal is appropriate because the amended complaint alleges that plaintiff's termination was due to the content of his reposts about the Conflict—not merely his use of social media—which is not protected under NYLL. (*Id*. at 7.) In support, it points to allegations in the amended complaint and the Notice that states the content of plaintiff's posts directly resulted in public scrutiny and complaints against the university. It additionally argues that plaintiff's

---

[1] The Court does not consider defendants' submission of supplemental authority and argument (NYSCEF doc. no 76, 77) —to the extent it discusses the supplemental authority—pursuant to NYCRR 202.8-c, as "material submitted in violation [of the rule] will not be read or considered." (*Id*.) This equally applies to plaintiff's response (NYSCEF doc. no. 77,79) as the "[o]pposing counsel who receives a copy of materials submitted in violation of this Rule shall not respond in kind." (NYCRR 202.8-c.)

**655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL**                                    **Page 6 of 17**
**Motion No.  003**

[* 6]

social media posts conflicted with its business interests, namely its reputation and standing with its patients and community. (*Id.* at 8.)

Then, it argues under the same rule that plaintiff's NYSHRL and NYCHRL discrimination claims fail to allege prima facie causes of action because the allegation of supporting Israel on social media as a means of religious practice fails to sufficiently allege a protected class within the definition of both HRL statutes. Again, it posits *arguendo*, that even if a protected act is pled, the amended complaint fails to adequately plead either an inference of religious discrimination or that religion was a motivating factor is plaintiff's removal and thus, dismissal is warranted. It also argues under CPLR 3211 (a) (1) and (a) (7) that NYSHRL and NYCHRL retaliation claims fail to allege a cause of action because the (1) conditional terms of the Agreement provided for the reallocation of funding upon the termination of plaintiff's leadership positions and (2) the alleged retaliatory formal inquiry of November 1st predates plaintiff's November 6th complaint of discrimination. It also attaches an email purportedly authored by Ackman, its Research Integrity Officer to claim that its decision to commence the research misconduct inquiry occurred well before plaintiff's November 6th letter. Finally, it argues under CPLR 3211 (a) (7) that the amended complaint fails to sufficiently allege facts that it intentionally interfered with plaintiff's business relations with a third party that resulted in damages.

Plaintiff's Opposition

Plaintiff opposes the motion in its entirety. He acknowledges the documents attached to defendants' moving papers—except the emails by Ackman—and claims that neither documents, whether incorporated by reference in the amended complaint and argued under CPLR 3211 (a) (7) nor attached under (a) (1), demonstrate defendants' entitlement to dismissal of his actions. (NYSCEF doc. no. 56, plaintiff's opp.) He contends that his breach of contract claim is adequately pled requires discovery before a proper determination can be rendered. He also contends that his amended complaint adequately alleges

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL                Page 7 of 17
Motion No. 003

7 of 17

claims under the broad and lenient deference afforded to NYSHRL and NYCHRL discrimination and retaliation claims. As to his labor law claim, he contends that the amended complaint adequately pleads that his termination was associated with his recreational use of social media and thus is protected under NYLL. Finally, he contends that the amended complaint adequately pleads defendants' intentional interference with his consulting relationships. Defendants' Reply reiterates their main arguments.

## DISCUSSION

On a motion to dismiss under CPLR 3211 (a) (1), courts may grant such relief only where the "documentary evidence" is of such nature and quality—"unambiguous, authentic, and undeniable"—that it utterly refutes plaintiff's factual allegation, thereby conclusively establishing a defense as a matter of law. (*See Phillips v Taco Bell Corp.*, 152 AD3d 806, 806-807 [2d Dept 2017]; *VXI Lux Holdco S.A.R.L v SIC Holdings, LLC*, 171 AD3d 189, 193 [1st Dept 2019 ["A paper will qualify as 'documentary evidence' if…(1) it is 'unambiguous,' (2) it is of 'undisputed authenticity,' and (3) its contents are 'essentially undeniable'"].) The First Department explained that the documentary evidence must "definitely dispose of the plaintiff's claim." (*Art & Fashion Group Corp. v CyclopsProd., Inc.* 120 AD3d 436, 438 [1st Dept 2014].)

Motions to dismiss brought under CPLR 3211 (a) (7), require courts to afford the pleadings a liberal construction, accept the facts as alleged in the complaint as true, and give the plaintiff the benefit of every possible favorable inference. (*Leon v Martinez*, 84 NY2d 83, 87 [1994]; *JF Capital Advisors, LLC v Lightstone Group, LLC*, 25 NY3d 759, 764 [2015].) A court's inquiry is limited to assessing the legal sufficiency of the plaintiff's pleadings—that is, whether the facts set forth by the plaintiff sufficiently apprise the court and the defendants of the transactions and/or occurrences that make up the material elements of a cause of action. (*See* CPLR 3013.) Accordingly, the Court's only function is to determine whether the facts as alleged fit within a cognizable legal theory. (*JF Capital Advisors*, 25

**655743/2023 NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL** Page 8 of 17
Motion No. 003

8 of 17

[* 8]

NY3d at 764.) However, when evidentiary material *is* considered, the criterion is whether the proponent of the pleading has a cause of action, not whether they have stated one. (*See Biondi v Beekman Hill Apt. Corp.*, 257 AD2d 76 [1st Dept 1999] citing *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977] [when considering evidentiary material under CPLR [a] [7], "the criteria is whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one, and unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it … dismissal should not eventuate].)

*Breach of Contract Claim*

Defendants appear to move for dismissal of plaintiff's breach of contract claim under CPLR 3211 (a) (1) and (7). The Court finds that defendants have not demonstrated its entitlement to dismissal of this claim under either branch of this rule. To plead a cause of action for breach of contract a plaintiff must allege that: (1) a contract exists, (2) plaintiff performed in accordance with the contract, (3) defendant breached its contractual obligations, and (4) defendant's breach resulted in damages. (*See 34-06 73, LLC v Seneca Insurance Company*, 39 NY3d 44 [2022].)

The parties dispute whether the second and third elements are adequately pled. As to the second element, defendants argue under CPLR 3211 (a) (7), that a review of the complained-of media posts demonstrates that plaintiff failed to perform under the Agreement because his publications violate its Policy that mandates all NYULH employees conduct themselves in a professional manner on social media platforms. This argument is unavailing. Defendants' conclusion drawn from its own subjective interpretation of the Policy's criteria entirely absent from the pleadings or submissions: a conclusion that can only be revealed through the meaningful exchange of discovery. Thus, it cannot be said, as defendants argue, that the express language contained in the Policy conclusively establishes that plaintiff

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL
Motion No. 003
Page 9 of 17

9 of 17

failed to perform under the Agreement. (*See Biondi v Beekman Hill Apt. Corp.*, 257 AD2d 76 [1st Dept 1999].)

As to the third element—defendants' alleged breach—defendants argue under CPLR 3211 (a) (1) that the Agreement demonstrates its right to terminate plaintiff's leadership position at any time for cause. It relies, in relevant part, on the Agreement's language that states: "[C]onduct which, in the good faith determination of NYU Langone Health has had or may be expected to have a detrimental effect upon the reputation, character or standing of NYU Langone Health." (Agreement at 17.) This argument is also unavailing. First, the express language in the Agreement merely provides the criteria for cause, which is a fact-specific conclusion ultimately established after defendants' subjective "good faith determination" which, as noted above, is absent from the amended complaint and moving papers. Therefore, without these specific facts it cannot be said that the express terms of the Agreement conclusively demonstrates that defendants complied with the terms of the Agreement. (*See Spoleta Const., LLC v Aspen Ins. UK Ltd.*, 27 NY3d 933 [2016] [Denying defendant's motion to dismiss because the documentary evidence failed to "conclusively establis[h] a defense to the asserted claims as a matter of law"].)

Second, The language that defendants advance its argument upon fails to conclusively refute the amended complaint's allegations that (1) plaintiff's posts were similar to its own public statement about the Conflict and (2) Abramson's admission that no cause existed to justify its discipline and subsequent termination of his leadership positions— both of which are allegations that this Court must accept as true under CPLR 3211 (a) (7) and in doing so, adequately pleads that defendant's termination of same breached the Agreement.

*New York Labor Law*

655743/2023  NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL          Page 10 of 17
Motion No. 003

10 of 17

Section 201-d (2) (c) of the New York Labor Law ("NYLL") prohibits an employer from discharging or otherwise discriminating against an employee based on the individual's recreational activities that occur outside of work hours and off the employer's premises. The section defines recreational activities as "any lawful, leisure-time activity, for which an employee receives no compensation, and which is generally engaged in for recreational purposes, including but not limited to sports, games, hobbies, exercise, reading and the viewing of television, movies and the similar." (*Id.*)

Defendants' argument that the amended complaint contains allegations that defendants terminated plaintiff's leadership positions based on the content of his reposts and comments is persuasive. (*See* plaintiff memo in supp. at 6-9.) Specifically, defendants' citation to *Sander v Westchester Reform Temple*, 228 AD3d 688 [2nd Dept. 2024]) is persuasive. In *Sander*, the plaintiff alleged that her employer, a proudly Zionist institution, violated NYLL § 201-d (2) (c) when it terminated her position after it discovered that she co-authored a blog post which expressed anti-Zionist views and criticized Israel. (*Id.* at 698.) The Appellate Division, Second Department, determined that even when given all favorable inferences—including the assumption that blogging is protected recreational activity—the complaint failed to establish a cause of action because it plainly alleged that the plaintiff was discharged "not for the activity of blogging, but for the content of the blog post" and granted defendant's motion to dismiss because "[t]he plaintiff was not discharged due to a protected recreational activity within the scope of Labor Law § 201-d (2) (c) (citation omitted.)" (*Id.*)

Similarly, here the amended complaint plainly states plaintiff's leadership positions were terminated because his social media posts garnered "social media reactions and some patient complaints" against the university and that same "has had and may be expected to have" on defendants' reputation and relationships in the community. (amended complaint at ¶¶ 32, 36.) The Notice, which the amended complaint incorporates by reference, (amended complaint at fn. 13) also states that plaintiff's "social media posts postings regarding the Israel-Hamas war" as the basis for its termination of his leadership

655743/2023 NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL
Motion No. 003

Page 11 of 17

11 of 17

positions. The remaining allegations in the amended complaint lead to the same conclusion: that both plaintiff and Masoud's social media posts drew criticism against the university from supporters of both geopolitical positions, and that the defendants wrestled with addressing the public scrutiny in a fashion that appeased both sides.

Plaintiff contends that *Cavanaugh v Doherty*, 243 AD2d 92 (3rd Dept. 1998) renders the decision in *Sander* of "limited persuasive value" because his amended complaint essentially alleges that his termination "aris[es] out of his recreational activity." (plaintiff opp. at 19.) However, the facts in *Cavanaugh* are distinguishable from plaintiff's case. There, the plaintiff alleged that her employer violated NYLL § 201-d because an administrative official ordered her supervisor to discharge her approximately 48 hours following her verbal dispute about her political affiliation with a another high-ranking executive official while in a restaurant after work. (*Cavanaugh*, 243 AD2d 92 at 95.) The complaint alleged that after the plaintiff called the executive official an "asshole" the executive official responded that "he would have her [plaintiff] job in the morning" and two days later plaintiff's supervisor terminated her, allegedly upon the direction of the administration. (*Id.*) Based on these exclusive set of facts, the Appellate Division, Third Department, concluded that the complaint adequately pled a cause of action under NYLL. (*Id.* at 100.) Conversely, here, the amended complaint fails to contain any allegations that plaintiff was confronted by the university or anyone from its administration because they disagreed with his use of social media. Rather, the amended complaint alleges that defendants confronted him after the content of three of his social media posts about the Conflict drew complaints and widespread public scrutiny against the university. Notably, the amended complaint alleges that plaintiffs complained-of social media posts were published within the context of a geopolitical crisis where, in its own words, "[reactions] across the world varied greatly." (amended complaint at ¶4.) Thus, the facts in *Cavanaugh* neither mirrors the facts and circumstances as alleged in plaintiff's amended complaint, nor does it refute the persuasive finding in *Sander* that dismissal is warranted when a claim brought under NYLL plainly

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL
Motion No. 003

Page 12 of 17

alleges that the disputed termination was due to the content of the activity, which is present in both the amended complaint and the documents it incorporates by reference.

*NYSHRL and NYCHRL – Discrimination*

To state a claim for discrimination under NYSRHL and NYCHRL a plaintiff must allege (1) that he/she is a member of a protected class, (2) that he/she was qualified for the position, (3) that he/she was subjected to an adverse employment action (under State HRL) or he/she was treated differently or worse than other employees (under City HRL), and (4) that the adverse or different treatment occurred under circumstances giving rise to an inference of discrimination or a discriminatory motive (*Santiago–Mendez v City of New York,* 136 AD3d 428 [1st Dept. 2016]; *Rollins v Fencers Club, Inc.,* 128 AD3d 401 [1st Dept. 2015]; Executive Law § 296; Administrative Code of City of N.Y. § 8–107). Both the NYSHRL and NYCHRL are to be construed liberally to accomplish their purpose in barring discrimination. (See Executive Law § 300 ["The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof"]; Administrative Code of the City of NY § 8-130 [a] [same]; *Bennett v Health Mgt. Sys., Inc.,* 92 AD3d 29, 34 [1st Dept. 2011].)

The parties dispute whether the amended complaint adequately pleads the fourth element. Defendants argue that under CPLR 3211 (a) (7), the amended complaint asserts speculative and conclusory allegations and that the claims fail to give rise to an inference of discrimination or a discriminatory animus. The Court disagrees. The amended complaint alleges, at a minimum, that plaintiff's leadership position was terminated due to his public support of his religion and further alleges that defendants' executive vice president made comments that indicate both his termination and subsequent treatment were motivated by a discriminatory animus. To the extent the complaint contains these allegations—and given that (1) the Court's role is to assess whether the facts fit within a cognizable legal theory regardless of whether plaintiff will ultimately be able to prove such

allegations, and (2) the liberal construction afforded to NYSHRL and NYCHRL claims in the pleading state—this branch of the motion to dismiss is denied.

*NYSHRL and NYCHRL – Retaliation*

Under NYSCRHL and NYCHRL it is unlawful for an employer to retaliate against an employee for opposing discriminatory practices. Executive Law § 296 (1) (e) (7); Administrative Code of the City of NY §8-107 (7).  When a defendant moves to dismiss a claim of retaliation under either law, they must demonstrate that the plaintiff cannot demonstrate a prima facie claim.  To plead a cause of action for retaliation under the NYSHRL and NYCHRL, a plaintiff must allege that (1) they engaged in a protected activity by opposing prohibited conduct; (2) the defendant was aware of plaintiff's protected activity; (3) plaintiff was subject to an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action or an action that disadvantaged the plaintiff. (*See Harrington v City of New York,* 157 AD3d 582, 585 [1st Dept. 2018]; *Fletcher v Dakota, Inc.*, 99 AD3d 43, 51 [1st Dept. 2012].) Pursuant to the City HRL, the employer's actions need not be "materially adverse" to the plaintiff, but merely "reasonably likely to deter a person from engaging in protected activity." (*See Williams v New York City Hous. Auth.*, 61 AD3d 62, 71 [1st Dept. 2009]; Administrative Code of NY § 8-107 [7].) Plaintiffs in retaliation cases are held to a lenient notice pleading standard and are generally afforded deference at the pleading stage (*See Altidor v Medical Knowledge Group, LLC*, 2026 WL 437756 [1st Dept, Feb. 17, 2026, Index No. 655007/2023]; *Petit v Department of Educ. of the City of N.Y.,* 177 AD3d 402, 403 [1st Dept. 2019]).

The parties dispute whether the amended complaint adequately pleads the fourth element. Even if the Court were to find that the defendants' November 1st commencement of the formal inquiry severs the

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL                    Page 14 of 17
Motion No.  003

14 of 17

causal chain[2] from plaintiff's November 6th and November 20th complaints of discrimination, as alleged in the amended complaint, it nonetheless fails to demonstrate entitlement to dismissal of this action under both NYSHRL and NYCHRL. This is because neither party disputes that the amended complaint alleges that defendants reallocated Neel Lab's funding after plaintiff's November 6th complaint and November 20th civil complaint. Defendants' argument that the Agreement conclusively refutes a causal connection between the parties' conduct is unavailing. The conditional language contained in the Agreement does not conclusively demonstrate—as it must when argued under CPLR 3211 (a) (1) as defendants do here—that the manner in which it ultimately decided to reallocate Neel Lab's funding was not performed in retaliation for plaintiff's complaints of discrimination. It merely provides conditions precedent to satisfy certain obligations, namely plaintiff's continued cancer research and defendants' funding of said research. In other words, while the Agreement's language may serve to demonstrate the defendants' obligations— or lack thereof— for purposes of contractual liability, it fails to as a matter of law, conclusively refute the amended complaints temporal allegations that defendants weaponized the clause in retaliation for plaintiff's complaints of discrimination. And when considering the lenient notice pleading standard afforded to retaliation claims, this allegation satisfies the fourth element of a claim for retaliation under both NYSHRL and NYCHRL.

*Intentional Interference with a Prospective Economic Advantage*

Intentional interference with a prospective economic advantage requires a showing that but for the wrongful or malicious acts of the defendant, a known third party would have entered into a business relationship with a plaintiff. Thus, the required elements to be pled are that (1) the defendant had

---

[2] Defendants' attachment of the email correspondences between Ackman and Abramson (NYSCEF doc. no. 48, Exhibit K) does not meet the criterion of "documentary evidence" for purposes of its argument under CPLR 3211 (a) (1). Generally, records reflecting out-of-court transactions such as mortgages, deeds, and contracts are properly considered documentary evidence because the contents are essentially undeniable (*Prott v Lewin & Baglio, LLP*, 150 AD3d 908 [2017]), while letters, emails, and affidavits do not meet this essential criterion and are therefore, not considered documentary evidence. (*Phillips v Taco Bell Corp.*, 152 AD3d 806, 807 [2d Dept 2017].)

knowledge of plaintiff's business relationship with a third party, (2) that the defendant intentionally interfered with that business relationship, (3) that the defendant acted by use of wrongful means or with the sole purpose of malice, and (4) injury to the business relationship. (*See 534 E. 11th St. Hous. Dev. Fund Corp. v Hendrick,*90 AD3d 541 [1st Dept 2011].) The level of culpable conduct necessary to state a cause of action is comparably high when viewed against other business torts, and thus a complaint must allege that the conduct was motivated solely by malice or to inflict injury by unlawful means beyond mere self-interest or economic considerations. (*Bradbury v Israel,* 204 AD3d 563, 564-565 [1st Dept. 2022]; *Carvel Corporation v Noonan*, 3 NYS3d 182, 190 [2004]; *NBT Bancorp Inc. v Fleet/Norstar Fin. Group, Inc.,* 87 NY2d 614 [1996] citing *Guard-Life Corp. v S. Parker Hardware Mfg. Corp.,* 50 NY2d 183 [1980] ["Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant"].) Most importantly, the alleged culpable conduct must have been directed at the third party with whom plaintiff sought to have the relationship. (*See Carvel Corp.*, 3 NY3d at 192; *Rockwell Global Capital, LLC v Soreide Law Group, PLLC*, 100 AD3d 448, 449 [1st Dept. 2012].)

Defendants have demonstrated its entitlement to the dismissal of this action under CPLR 3211 (a) (7). The amended complaint alleges that defendants intentionally interfered with plaintiff's business relationships "with various third parties, including Lighthorse Therapeutics" by publicly announcing his suspension and termination and engaging in dishonest, unfair, and improper conduct. However, it fails to allege that (1) defendants had knowledge of plaintiff's business relationships with third parties and (2) that its announcement of his suspension was directed towards those third parties. These omissions are fatal to plaintiff's action sounding in intentional tort as same requires the elements of specific knowledge and intentional conduct directed towards the third party to sufficiently plead a cause of action. (*See Reeves v Associated Newspapers, Ltd.*, 218 NYS3d 19 [1st Dept. 2024] [affirming dismissal of interference with contract and prospective economic advantage claim because complaint failed to allege defendant's knowledge of plaintiff's business relationships with third parties]; *Carl v Cohen*, 55 AD3d

655743/2023  NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL
Motion No. 003

Page 16 of 17

[* 16]

16 of 17

478 [1st Dept. 2008] [finding that [t]he tortious interference claim was insufficient because it failed to allege that defendant had directed his fraudulent conduct at a specific third party . . .]; Accordingly, it cannot be said that the amended complaint adequately pleads a cause of action for intentional interference with a prospective economic advantage. Therefore, it is hereby,

ORDERED that defendants' motion to dismiss is granted in part; and it is further

ORDERED that counts 6 and 7 of the amended complaint are dismissed; and it is further

ORDERED that defendants shall interpose an answer or otherwise appear in accordance with the CPLR; and it is further

ORDERED that the parties shall appear for a preliminary conference on April 28, 2026, and it is further

ORDERED that defendants shall serve a copy of this Decision and Order on all parties with notice of entry on NYSCEF within 10 days of the entry of this Order.

This constitutes the Decision and Order of the Court.

_____
DATE

_____
DAKOTA D. RAMSEUR, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

655743/2023   NEEL, BENJAMIN G. vs. NEW YORK UNIVERSITY ET AL
Motion No. 003

Page 17 of 17

17 of 17

[* 17]